SYLLABUS

(This syllabus is not part of the opinion of the Court. It has been prepared by the Office of the Clerk for the convenience of the reader. It has been neither reviewed nor approved by the Supreme Court. Please note that, in the interest of brevity, portions of any opinion may not have been summarized.)

**Prioleau v. Kentucky Fried Chicken, Inc.** (A-99-13) (074040)

**Argued March 17, 2015 – Decided September 28, 2015**

**PATTERSON, J., writing for a unanimous Court.**

In this appeal, the Court considers the application of the mode-of-operation rule to plaintiff's personal injury claims. Under the mode-of-operation rule, a business invitee who is injured on the premises of the business is entitled to an inference of negligence and is relieved of the obligation to prove that the business owner had notice of the dangerous condition that caused the accident.

On December 26, 2009, plaintiff and her adult son and daughter were on a trip from their home in Delaware to New Jersey. Plaintiff and her children recall that the day was rainy; plaintiff stated that there was a "torrential storm." They stopped for dinner at a Kentucky Fried Chicken restaurant in Cherry Hill.

When plaintiff entered the restaurant, she immediately went to the counter to tell her son what she wanted to eat, and then headed to the restroom. As she approached the restroom, plaintiff slipped and fell, landing on her buttocks and hands. According to plaintiff, the floor near the restroom was greasy and wet, and she testified that it was slippery "like I was on ice."

Although she testified that she was in pain, plaintiff did not seek immediate medical attention. Plaintiff continued on their trip. After returning to Delaware, plaintiff sought medical treatment and was referred to a neurosurgeon who prescribed physical therapy. Plaintiff alleged that she suffers constant pain in her lower back, takes pain medication, and that the pain has affected her ability to perform some of the tasks assigned to her work.

Managers and employees of Kentucky Fried Chicken testified that employees are expected to regularly monitor customer areas and to mop up spills and excess water. One manager testified that oil was used to cook the food served and sometimes spilled on the kitchen floor. She acknowledged that kitchen employees could "possibly" track cooking oil to customer areas when they used the restrooms.

Plaintiff filed this action asserting a negligence claim and alleging that defendants failed to exercise reasonable care. The matter was tried before a jury over three days. At the jury charge conference, plaintiff's counsel claimed plaintiff was entitled to a mode-of-operation jury charge because oil may have been tracked from the restaurant kitchen to the floor near the restroom. The trial court agreed, also citing testimony that the employees "should have a cone out on a rainy day." Instead of choosing one of the alternative model charges on the mode-of-operation rule set forth in the Model Jury Charge (Civil), the trial court gave both alternatives in sequence. In addition, the trial court separately instructed the jury based on the charge, "Notice Not Required When Condition is Caused by Defendant," which permits a plaintiff to recover without showing that the defendant had notice of the unsafe condition if the owner or employee created the unsafe condition through his or her own act or omission.

The jury found defendants negligent and defendants appealed. A divided Appellate Division panel reversed the trial court's determination on the mode-of-operation rule, vacated the judgment and remanded for a new trial. A dissenting member of the panel viewed the majority's construction of the mode-of-operation rule too limited and deemed the rule applicable. Plaintiff appealed as of right based on the dissenting opinion.

**HELD**: The mode-of-operation rule applies only in situations where the customer foreseeably serves himself or herself, or otherwise directly engages with products or services unsupervised by an employee. Plaintiff's theories of liability did not involve a self-service operation that might warrant a mode-of-operation jury instruction. Because the trial court's erroneous mode-of-operation charge may well have determined the jury's verdict, defendant is entitled to a new trial on the issue of liability.

1

1.  The sole issue raised by this appeal is whether the trial court's decision to charge the jury on the mode-of-operation rule constituted reversible error. Not every improper jury charge warrants reversal. A new trial is warranted only where the jury could have come to a different result had it been correctly instructed. (pp. 13-15)

2.  Ordinarily, an invitee seeking to hold a business proprietor liable in negligence must prove, as an element of the cause of action, that the defendant had actual or constructive knowledge of the dangerous condition that caused the accident. The burden imposed on a plaintiff invitee is substantially altered in settings in which the mode-of-operation rule applies. The rule gives rise to a rebuttable inference that the defendant is negligent, and obviates the need for the plaintiff to prove actual or constructive notice. (pp. 15-16)

3.  In all of its prior mode-of-operation cases, this Court has emphasized the self-service nature of the defendant's business. The Appellate Division has taken a similar approach, applying the rule to cases arising from injuries in which defendants conduct self-service operations. One principle derived from these cases is that the mode-of-operation rule is not a general rule of premises liability, but a special application of foreseeability principles in recognition of the extraordinary risks that arise when a defendant chooses a customer self-service business model. (pp. 16-24)

4.  The trial court here did not properly apply the mode-of-operation rule and the Appellate Division majority correctly stated the scope of the rule. There is no evidence in the trial record that the location in which plaintiff's accident occurred bears the slightest relationship to any self-service component of defendants' business. Moreover, plaintiff's theories of liability do not involve a self-service operation that might warrant a mode-of-operation jury instruction. (pp. 24-27)

5.  Plaintiff contends that even if the trial court erred in giving the mode-of-operation charge, it was harmless error that does not warrant a new trial. That argument is premised on the notion that the jury may have based its finding of negligence not on the mode-of-operation rule, but on the different standard that governs cases in which the defendant or its employees caused the dangerous condition. Based on the record at trial, the court cannot conclude that the error was harmless. The jury could have found liability based only on the mode-of-operation rule. Defendants are therefore entitled to a new trial on the issue of liability. (pp. 27-29)

The judgment of the Appellate Division is **AFFIRMED** as **MODIFIED**, and the matter is **REMANDED** for further proceedings consistent with the Court's opinion.

**CHIEF JUSTICE RABNER; JUSTICES LaVECCHIA, ALBIN, FERNANDEZ-VINA, and SOLOMON; and JUDGE CUFF (temporarily assigned), join in JUSTICE PATTERSON's opinion.**

JANICE J. PRIOLEAU,

    Plaintiff-Appellant,

       v.

KENTUCKY FRIED CHICKEN, INC.,
and KFC CORPORATION,

    Defendants,

       and

YUM BRANDS, INC. and KFC U.S.
PROPERTIES, INC.,

    Defendants-Respondents.


       Argued March 17, 2015 – Decided September 28, 2015

       On appeal from the Superior Court, Appellate
       Division, whose opinion is reported at 434
       N.J. Super. 558 (App. Div. 2014).

       Glenn A. Montgomery argued the cause for
       appellant (Montgomery, Chapin & Fetten,
       attorneys; Gary Ahladianakis, on the
       briefs).

       Beth A. Carter argued the cause for
       respondents (Bennett, Bricklin & Saltzburg,
       attorneys).

       Lewis Stein argued the cause for amicus
       curiae The New Jersey Association for
       Justice (Nusbaum, Stein, Goldstein,
       Bronstein & Kron, attorneys).

    JUSTICE PATTERSON delivered the opinion of the Court.

In a series of decisions arising from personal injuries sustained by business invitees on the premises of businesses whose operations involve customer self-service, this Court has recognized a principle known as "mode of operation." See Nisivoccia v. Glass Gardens, Inc., 175 N.J. 559, 563-65 (2003); Wollerman v. Grand Union Stores, Inc., 47 N.J. 426, 429-30 (1966); Bozza v. Vornado, Inc., 42 N.J. 355, 359-60 (1964). Under the mode-of-operation rule, a business invitee who is injured is entitled to an inference of negligence and is relieved of the obligation to prove that the business owner had actual or constructive notice of the dangerous condition that caused the accident. See Nisivoccia, supra, 175 N.J. at 563-65; Wollerman, supra, 47 N.J. at 429-30; Bozza, supra, 42 N.J. at 359-60. The rule has only been applied to settings such as self-service or a similar component of the defendant's business, in which it is reasonably foreseeable that customers will interact directly with products or services, unassisted by the defendant or its employees.

In this appeal as of right from a judgment in favor of plaintiff Janice J. Prioleau, pursuant to Rule 2:2-1(a)(2), we review the trial court's application of the mode-of-operation rule to plaintiff's personal injury claim. Plaintiff sustained injuries in a fall as she walked to the restroom in a Kentucky Fried Chicken restaurant. She alleged that she fell either

2

because defendants failed to exercise reasonable care to keep the restaurant floor dry on a rainy evening or because defendants' employees tracked oil and grease from the restaurant's kitchen to the area near the restroom.

At trial, although the evidence suggested no nexus between any self-service aspect of the restaurant's operations and plaintiff's accident, the trial court instructed the jury to consider the mode-of-operation rule. The jury returned a verdict in plaintiff's favor, and defendants appealed. A majority of the Appellate Division reversed, holding that the trial court's mode-of-operation charge was improper in the circumstances of this case, and remanded for a new trial. A member of the panel concurred in part and dissented in part, finding ample support for the mode-of-operation charge in the testimony presented at trial.

We affirm as modified the judgment of the Appellate Division. The trial record establishes that plaintiff's injuries were unrelated to any aspect of defendants' business in which the customer foreseeably serves himself or herself, or otherwise directly engages with products or services, unsupervised by an employee. Neither theory of liability advanced by plaintiff involved the limited circumstances in which the mode-of-operation rule has been held to apply. Because the mode-of-operation rule significantly reduced

3

plaintiff's burden of proof, and may have determined the outcome, the trial court's charge on the rule constituted reversible error. Accordingly, we remand this matter to the trial court for a new trial on the issue of liability.

                                    I.

This appeal arose from a slip-and-fall accident that occurred on December 26, 2009, at a Kentucky Fried Chicken restaurant in Cherry Hill.[1] The restaurant was owned by KFC U.S. Properties Inc., whose parent corporation is Yum! Brands Inc.[2]

According to the deposition testimony of Yum! Brands' Loss Prevention Manager, which was read into the record at trial, the corporation's policy is that employees are expected to regularly monitor customer areas and to set up safety signs to alert customers in areas where the floors are wet. The Cherry Hill Kentucky Fried Chicken store manager testified that the restaurant did not have a policy to clean the floors "throughout the course of the day," but that the floors would be cleaned "if there was a spill." She testified that on rainy days, when

---

[1] Our summary of the facts is derived from the trial record. The facts are not stipulated; the parties substantially dispute the condition of the restaurant floor, the cause of plaintiff's accident, and the extent of her injuries.

[2] Defendants assert that the lead defendant named by plaintiff as the owner of the restaurant, Kentucky Fried Chicken, Inc., does not exist. They represent that "Yum! Brands, Inc. is the parent company of KFC U.S. Properties, Inc.; and KFC Corporation is a sister corporation of KFC U.S. Properties, Inc."

customers tracked water into the restaurant, employees would post "wet floor" signs and would use a mop to remove water "if it's too wet[.]"

The corporate area manager testified that oil was used to cook the food served and that oil sometimes spilled on the kitchen floor. She acknowledged that kitchen employees could "possibly" track cooking oil to customer areas when they used the restrooms. The restaurant's manager on duty stated that the facility cleaned the floors with color-coded mops, which are used to clean either the kitchen or the customer areas, to prevent the spread of oil from the kitchen to floors used by customers. According to the assistant manager on duty, when she arrived for her shift about four hours prior to plaintiff's accident, she did not conduct a detailed inspection of the floor.

On the evening of her accident, plaintiff and her adult son and daughter, Richard Prioleau and Adriana Prioleau, were on a trip from their home in Delaware to New Jersey. The family planned to meet a friend who would then drive plaintiff's son to his destination, New York City. Plaintiff and her children recalled that the weather that evening was rainy; plaintiff stated that there was a "torrential storm."

At approximately 6:00 p.m., plaintiff and her children decided to stop at the Kentucky Fried Chicken restaurant to have

5

dinner. When plaintiff entered the restaurant, she immediately went to the counter to tell her son what she wanted to eat, and then headed to the restroom. Plaintiff testified that, because of the heavy rain outside, she and her children "tracked water" into the restaurant.

As she approached the restroom, plaintiff slipped and fell, landing on her buttocks and hands. According to plaintiff, the floor near the restroom felt greasy and wet, and she testified that it was slippery "like I was on ice . . . like Ice Capades." She stated that there were no mats or warning signs in the area where she fell. Plaintiff's son, daughter, and another patron came to plaintiff's aid; plaintiff stated that "they were sliding around, too," as they tried to lift her to her feet. Plaintiff's children agreed with her that the floor near the restroom at the restaurant was "slippery" and "greasy."

Significantly, for purposes of this appeal, nothing in the record suggests that when she fell, plaintiff was engaged in, or in contact with, any self-service activity, such as filling a beverage cup at a restaurant soda machine, selecting items from a condiment tray, or that patrons were carrying their drinks or food to the restroom area. Indeed, plaintiff's testimony established that she had not yet ordered or purchased her dinner when her accident occurred. Instead, by her own account, plaintiff fell immediately after entering the restaurant.

According to plaintiff, she was in pain after her fall but did not immediately seek medical attention. Pursuant to corporate policy, the assistant manager on duty apologized to plaintiff and provided free meals to her and her children. The assistant manager testified that, although she observed no liquid on the floor where plaintiff had fallen, she posted a cone by the restroom. Plaintiff and her children left the restaurant and continued their trip to meet their friend.

After returning to Delaware, plaintiff went to the emergency room, and was subsequently examined by her family physician, who referred her to a neurosurgeon. The neurosurgeon prescribed physical therapy. Plaintiff alleged that she experiences constant pain in her lower back and takes pain medication, that she refused treatment involving needles or surgery because she considers it invasive, and that her pain has affected her ability to perform some of the tasks assigned to her at work.[3]

Plaintiff filed this action in the Law Division. She asserted a negligence claim and specifically alleged that defendants failed to exercise reasonable care by failing to

---

[3] Plaintiff's expert diagnosed a contusion with sprain and strain to the lower back and several bulging and herniated discs, as well as activation of preexisting asymptomatic degenerative changes in the lumbar spine. Defendants did not present expert testimony regarding plaintiff's medical condition.

provide plaintiff, an invitee, with "a safe place to traverse the premises[.]"

The case was tried before a jury over three trial days. At the close of the proofs, defendants moved for a directed verdict, and the trial court denied defendants' motion.

At the jury charge conference, plaintiff's counsel asserted that, because oil may have been tracked from the restaurant kitchen to the floor near the restroom, plaintiff was entitled to a mode-of-operation jury charge. Plaintiff's counsel defined the mode of operation in this case as "[t]he fact that there's grease being used in the operation," and "[t]he fact that [defendants' managers] have testified that they should go out and look at and examine the floor all the time or everyday[.]" Over defense counsel's objection, the trial court agreed to give the mode-of-operation jury charge, stating that "this was a fast food restaurant [with] only six tables, [and] a lot of people in and out on a rainy day." The court also cited testimony that "they should have a cone out on any rainy day" because the floor would become wet and slippery.

The trial court did not choose one of the alternative model charges on the mode-of-operation rule set forth in Model Jury Charge (Civil) 5.20F(11), "Notice Not Required When Mode of

8

Operation Creates Danger" (May 1970),[4] but gave both alternatives in sequence. In addition, the trial court separately instructed the jury based on Model Jury Charge (Civil) 5.20F(9), "Notice Not Required When Condition is Caused by Defendant," which permits a plaintiff to recover without showing that the defendant had actual or constructive notice of the unsafe condition, if the jury finds that the premises "was not in a reasonably safe condition" and "the owner[,] occupier or his/her agent, servant or employee created that condition through his/her own act or omission[.]"

The jury found defendants negligent, without identifying the theory of negligence on which its verdict was based, and concluded that defendants' negligence was a proximate cause of plaintiff's accident. It allocated 51% of the fault to defendants and 49% to plaintiff, and awarded plaintiff $250,000 in damages. Pursuant to the Comparative Negligence Act, N.J.S.A. 2A:15-5.2(d), the trial court molded the verdict to reflect the allocation of fault. It awarded $11,143.09 in prejudgment interest and entered judgment in plaintiff's favor, totaling $138,643.09.

---

[4] Since the trial in this case, the mode-of-operation charge has been renumbered as Model Jury Charge (Civil) 5.20F(10), "Actual and Constructive Notice Defined" (rev. Dec. 2014).

Defendants appealed the trial court's judgment.  A divided Appellate Division panel affirmed the trial court's denial of defendant's motion for a directed verdict and declined to review an evidentiary issue regarding plaintiff's prior medical history.  Prioleau v. Ky. Fried Chicken, Inc., 434 N.J. Super. 558, 564 (App. Div. 2014).  However, a majority of the panel reversed the trial court's determination on the mode-of-operation rule, vacated the trial court's judgment and remanded the matter for a new trial.  Ibid.

The majority reasoned that "the unifying factor" in case law recognizing the mode-of-operation doctrine "is the negligence [that] results from the business's method of operation, which is designed to allow patrons to directly handle merchandise or products without intervention from business employees, and entails an expectation of customer carelessness." Id. at 574 (citing Craggan v. IKEA USA, 332 N.J. Super. 53, 62 (App. Div. 2000)).  The majority noted that the mode-of-operation rule is not contingent on the conduct of the defendant's employees, but on "the business model that encourages self-service on the part of the customer, which can reasonably and foreseeably create a risk of harm to the customer."  Id. at 582 (citing Nisivoccia, supra, 175 N.J. at 564).  It observed that "[t]his concept does not lead to broad application."  Id. at 579.  Applying those principles to this

10

matter, the majority found nothing in the record evincing a "business practice that created an implicit or inherent danger" likely to cause plaintiff's injury. Id. at 582. It found that plaintiff's accident did not involve the "limited circumstances" in which the mode-of-operation rule applies. Id. at 583.

A member of the panel agreed with the majority's denial of the defendants' motion for a directed verdict and its view of the evidentiary issue regarding plaintiff's medical records, but disputed the majority's reversal of the trial court's determination on the mode-of-operation rule. Id. at 588 (Hoffman, J.A.D., concurring in part, dissenting in part). The judge agreed that the mode-of-operation rule turns on the defendant's method of business operation, and that the rule is not triggered merely by the fact that defendant's business is a fast food restaurant, but viewed the majority's construction of the rule as too limited. Id. at 592. Relying on Smith v. First National Stores, Inc., 94 N.J. Super. 462, 464-66 (App. Div. 1967), a case involving a supermarket customer who slipped on sawdust that store employees spread on the floor near a restroom, the concurring and dissenting judge argued that the facts of this case supported application of the mode-of-operation doctrine. Id. at 592-95.

11

Based on the dissenting opinion of the Appellate Division judge regarding the mode-of-operation rule, plaintiff appealed as of right. See R. 2:2-1(a)(2).

## II.

Plaintiff argues that the Appellate Division majority improperly limited the scope of the mode-of-operation rule. She asserts that application of the rule is not contingent on whether the hazard was created by customer self-service, but hinges on whether the dangerous condition was created by the defendant's customers or employees and is inherent in the defendant's business. Plaintiff argues that the use of cooking oil and grease is an integral feature of defendants' fast-food operation, and that the evidence adduced at trial supported a jury determination that plaintiff's accident occurred because employees tracked oil and grease from the kitchen to the floor near the restroom.

Alternatively, plaintiff argues that even if the trial court erroneously charged the jury to consider the mode-of-operation rule, the jury was properly instructed under Model Jury Charge (Civil) 5.20F(9), supra, an alternative theory of liability that obviates the need to prove actual or constructive notice if the dangerous condition is caused by the defendant. Thus, in plaintiff's view, even if the trial court's mode-of-operation charge was erroneous, that error was harmless.

12

Defendants contend that the mode-of-operation rule is irrelevant to this case because the rule applies only to operations arising from self-service aspects of supermarkets or other retail establishments, in which customers' activities, such as pulling items from shelves and bins, give rise to dangerous conditions. Defendants assert that the trial court erroneously extended the mode-of-operation rule to virtually all retail establishments. They claim that the trial court's mode-of-operation instruction was not harmless error because impermissible jury instructions are presumed to be reversible error, and because plaintiff prevailed in this case by the slimmest of margins -- an allocation of 51% of the fault to defendants and the remaining 49% to plaintiff.

III.

A.

The sole issue raised by this appeal is whether the trial court's decision to charge the jury on the mode-of-operation rule constituted reversible error.

"It is fundamental that '[a]ppropriate and proper charges to a jury are essential for a fair trial.'" Velazquez ex rel. Velazquez v. Portadin, 163 N.J. 677, 688 (2000) (quoting State v. Green, 86 N.J. 281, 287 (1981)). "'A jury is entitled to an explanation of the applicable legal principles and how they are to be applied in light of the parties' contentions and the

13

evidence produced in the case.'" Viscik v. Fowler Equip. Co., 173 N.J. 1, 18 (2002) (quoting Rendine v. Pantzer, 276 N.J. Super. 398, 431 (App. Div. 1994), aff'd, 141 N.J. 292 (1995)). As such, "[j]ury charges 'must outline the function of the jury, set forth the issues, correctly state the applicable law in understandable language, and plainly spell out how the jury should apply the legal principles to the facts as it may find them[.]'" Velazquez, supra, 163 N.J. at 688 (quoting Jurman v. Samuel Braen, Inc., 47 N.J. 586, 591-92 (1966)); see Mogull v. CB Commer. Real Estate Grp., 162 N.J. 449, 464 (2000) ("The jury charge 'should set forth an understandable and clear exposition of the issues.'" (quoting Campos v. Firestone Tire & Rubber Co., 98 N.J. 198, 210 (1984))). "'A jury instruction that has no basis in the evidence is insupportable, as it tends to mislead the jury.'" Dynasty, Inc. v. Princeton Ins. Co., 165 N.J. 1, 13-14 (2000) (quoting Lesniak v. Cnty. of Bergen, 117 N.J. 12, 20 (1989)).

Nonetheless, not every improper jury charge warrants reversal and a new trial. "As a general matter, [appellate courts] will not reverse if an erroneous jury instruction was 'incapable of producing an unjust result or prejudicing substantial rights.'" Mandal v. Port Auth. of N.Y. & N.J., 430 N.J. Super. 287, 296 (App. Div.) (quoting Fisch v. Bellshot, 135 N.J. 374, 392 (1994)), certif. denied, 216 N.J. 4 (2013). Those

principles guide our review of the charge given at trial in this matter.

"Generally, a proprietor's duty to his invitee is one of due care under all the circumstances." Bozza, supra, 42 N.J. at 359; see also Rowe v. Mazel Thirty, LLC, 209 N.J. 35, 44 (2012) (noting that landowner's duty of reasonable care to business invitee "'encompasses the duty to conduct a reasonable inspection to discover latent dangerous conditions'" (quoting Hopkins v. Fox & Lazo Realtors, 132 N.J. 426, 434 (1993))). Ordinarily, an invitee seeking to hold a business proprietor liable in negligence "must prove, as an element of the cause of action, that the defendant had actual or constructive knowledge of the dangerous condition that caused the accident." Nisivoccia, supra, 175 N.J. at 563 (citing Brown v. Racquet Club of Bricktown, 95 N.J. 280, 291 (1984)); see also Arroyo v. Durling Realty, LLC, 433 N.J. Super. 238, 243 (App. Div. 2013) (stating that "[t]he absence of [actual or constructive] notice is fatal to plaintiff's claims of premises liability," and that "[t]he mere existence of an alleged dangerous condition is not constructive notice of it" (internal quotation marks and citation omitted)).

The burden imposed on a plaintiff invitee is substantially altered in settings in which the mode-of-operation rule applies. The rule gives rise to a rebuttable inference that the defendant

15

is negligent, and obviates the need for the plaintiff to prove actual or constructive notice. See Nisivoccia, supra, 175 N.J. at 563-65; Wollerman, supra, 47 N.J. at 429; Bozza, supra, 42 N.J. at 359-60.

This Court first addressed the mode-of-operation rule in Bozza, supra, 42 N.J. at 359-60. There, the plaintiff contended that she fell on "'a sticky substance which was very slimy'" in a section of the defendant store's cafeteria. Id. at 358. She contended that in this self-service facility, in which customers consumed or "carried [their food], with or without trays," there were "drippings, paper straw holders, napkins and dirt on the floor." Ibid. The Court cited "[f]actors bearing on the existence of [a] reasonable probability" that a dangerous condition would occur: "the nature of the business, the general condition of the premises, [and] a pattern of conduct or recurring incidents." Id. at 360. The Court reasoned that "[t]o relieve the plaintiff of the requirement of proving actual or constructive notice in such instances is to effect a more equitable balance in regard to the burdens of proof." Ibid. It further explained that "[o]nce plaintiff introduces evidence which raises an inference of negligence, defendant may then negate the inference by submitting evidence of due care." Ibid.

Two years later, the Court reached a similar conclusion in a case arising from a plaintiff's fall on a string bean in the

16

produce aisle of a supermarket.  See Wollerman, supra, 47 N.J. at 428-30.  There, the Court focused on the self-service method of doing business that the supermarket had chosen, characterizing the dispositive factor as the "mode of operation":

> When greens are sold from open bins on a self-service basis, there is the likelihood that some will fall or be dropped to the floor.  If the operator chooses to sell in this way, he must do what is reasonably necessary to protect the customer from the risk of injury that mode of operation is likely to generate; and this whether the risk arises from the act of his employee or of someone else he invites to the premises.  The operator's vigilance must be commensurate with that risk.
>
> [Id. at 429 (citing Kahalili v. Rosecliff Realty, Inc., 26 N.J. 595, 603 (1958); Ambrose v. Cyphers, 29 N.J. 138, 144 (1959)).]

The Court identified that there were three potential reasons for the plaintiff's accident -- a store employee's carelessness in piling and displaying the beans, an employee's carelessness in handling the beans, and "carelessness of a patron."  Id. at 429.  The Court determined that the question of notice to the defendant would be relevant only in the third of those possibilities, customer negligence.  Ibid.  "[E]ven there," the Court noted, "since the patron's carelessness is to be anticipated in this self-service operation, defendant is liable, even without notice of the bean's presence on the floor, if . . . defendant failed to use reasonable measures

17

commensurate with the risk involved to discover the debris a customer might leave and to remove it before it injures another patron." Ibid. The Court concluded that the plaintiff was entitled to an inference of negligence, and that the defendant should be required to rebut that inference with evidence that it had used reasonable care. Id. at 429-30.

The Court again applied the mode-of-operation rule in a case arising from a customer's fall in a grocery store in Nisivoccia, supra, 175 N.J. at 561, 563-66. There, a customer was injured when she slipped on a grape near the entry of the checkout line at a supermarket that displayed its produce "in open-top, vented plastic bags that permitted spillage." Id. at 561-63. Distinguishing this case from Wollerman on the ground that the accident occurred near the checkout line, rather than in the produce aisle, the trial court declined to apply the mode-of-operation rule, and the Appellate Division affirmed. Id. at 562.

This Court reversed, holding that the plaintiff was entitled to a mode-of-operation jury instruction. Id. at 565-66. It reasoned that "[a] location within a store where a customer handles loose items during the process of selection and bagging from an open display obviously is a self-service area," and that in such a setting, a mode-of-operation charge is proper "when loose items that are reasonably likely to fall to the

18

ground during customer or employee handling would create a dangerous condition." Id. at 565. Focusing on the foreseeability of the hazard in self-service areas, the Court concluded that the checkout line raises the same safety concerns as the produce aisle setting addressed in Wollerman:

> Customers typically unload their carts onto the checkout counter. Droppage and spillage during that process are foreseeable. Indeed, because of the way the grapes were packaged, they could easily have fallen out when accidentally tipped or upended in a shopping cart anywhere in the store. The open and air-vented bags invited spillage. It was foreseeable then that loose grapes would fall to the ground near the checkout area, creating a dangerous condition for an unsuspecting customer walking in that area.
>
> [Ibid.]

The Court stated that the mode-of-operation rule applies when, "as a matter of probability, a dangerous condition is likely to occur as the result of the nature of the business, the property's condition, or a demonstrable pattern of conduct or incidents." Id. at 563. It defined the supermarket's mode of operation to include "the customer's necessary handling of goods when checking out, an employee's handling of goods during checkout, and the characteristics of the goods themselves and the way in which they are packaged." Id. at 566. It held that, in the retrial of the matter, negligence would be inferred, and

19

the store would be required to present evidence of due care. Ibid.

Thus, in all of its prior mode-of-operation cases, this Court has emphasized the self-service nature of the defendant's business. Id. at 563-66; Wollerman, supra, 47 N.J. at 429-30; Bozza, supra, 42 N.J. at 359-61. Significantly, the Court has applied the rule in self-service settings even when the accident resulted from the negligence of employees, as distinct from the carelessness of patrons, which has caused the dangerous condition. See Nisivoccia, supra, 175 N.J. at 563-65; Wollerman, supra, 47 N.J. at 429-30; Bozza, supra, 42 N.J. at 359-60.

Taking a similar approach, the Appellate Division has applied the mode-of-operation rule to cases arising from injuries in both indoor and outdoor areas in which defendants conduct self-service operations. See Ryder v. Ocean Cnty. Mall, 340 N.J. Super. 504, 507-09 (App. Div.) (affirming trial court's mode-of-operation jury charge in action brought by shopping mall patron who fell on "clear liquid" in area that was "the functional equivalent of a cafeteria"), certif. denied, 170 N.J. 88 (2001); Craggan, supra, 332 N.J. Super. at 56-58, 61-63 (holding that independent contractor who fell on string while loading merchandise was entitled to mode-of-operation charge where defendant allowed patrons to select and remove merchandise

20

from premises without intervention from store employees); O'Shea v. K. Mart Corp., 304 N.J. Super. 489, 491-93 (App. Div. 1997) (finding that plaintiff customer injured when golf bag fell from display did not need to prove that defendant store had notice of dangerous condition because "defendant [wa]s obligated to maintain . . . an enterprise consistent with the nature of its operation" as "a self-service store").

Moreover, appellate panels have consistently denied plaintiffs' requests for a mode-of-operation charge in the absence of any nexus between the self-service aspect of defendant's business and the plaintiff's injury. See Arroyo, supra, 433 N.J. Super. at 241, 244 (declining to apply mode-of-operation rule to claim of plaintiff injured on public sidewalk by tripping on used phone card against store that may have sold card); Carroll v. N.J. Transit, 366 N.J. Super. 380, 384, 389-90 (App. Div. 2004) (holding that mode-of-operation rule was irrelevant to claim of plaintiff injured after tripping on dog feces on subway steps); Znoski v. Shop-Rite Supermarkets, Inc., 122 N.J. Super. 243, 246-49 (App. Div. 1973) (denying store customer's request for mode-of-operation charge in case arising from injury inflicted on store property by unknown perpetrator who struck customer with shopping cart).

We derive several principles from these cases. First, the mode-of-operation doctrine has never been expanded beyond the

21

self-service setting, in which customers independently handle merchandise without the assistance of employees or may come into direct contact with product displays, shelving, packaging, and other aspects of the facility that may present a risk.  See Nisivoccia, supra, 175 N.J. at 563-66; Wollerman, supra, 47 N.J. at 429-30; Bozza, supra, 42 N.J. at 358-60; Craggan, supra, 332 N.J. Super. at 56-58; O'Shea, supra, 304 N.J. Super. at 491-93. The distinction drawn by these cases is sensible and practical. When a business permits its customers to handle products and equipment, unsupervised by employees, it increases the risk that a dangerous condition will go undetected and that patrons will be injured.  Thus, the mode-of-operation rule is not a general rule of premises liability, but a special application of foreseeability principles in recognition of the extraordinary risks that arise when a defendant chooses a customer self-service business model.

Second, the rule applies only to accidents occurring in areas affected by the business's self-service operations, which may extend beyond the produce aisle of supermarkets and other facilities traditionally associated with self-service activities.  See Nisoviccia, supra, 175 N.J. at 563-65 (applying mode-of-operation rule to accident in supermarket checkout area); Ryder, supra, 340 N.J. Super. at 507-09 (applying rule to customer accident in areas in which patrons carried food and

22

drinks); Craggan, supra, 332 N.J. Super. at 57-58, 61-62 (applying rule to customer fall in self-service loading area outside of store).  The dispositive factor is not the label given to a particular location, but whether there is a nexus between self-service components of the defendant's business and a risk of injury in the area where the accident occurred.

Third, the mode-of-operation rule is not limited to cases in which customer negligence created the dangerous condition; it also applies to self-service settings in which the injury may have resulted from the manner in which employees handled the business's products or equipment, or the inherent qualities of the merchandise itself.  See Nisivoccia, supra, 175 N.J. at 566 (observing that "mode of operation" includes not only customer conduct but also employee handling of goods, and characteristics and packing of goods themselves); Wollerman, supra, 47 N.J. at 429 (noting that either employee or customer carelessness may have caused accident).  Accordingly, the mode-of-operation charge may be given even in the absence of evidence that the carelessness of the plaintiff, or another patron, gave rise to the dangerous condition.  See Nisivoccia, supra, 175 N.J. at 566; Wollerman, supra, 47 N.J. at 429.

Fourth, if the mode-of-operation rule applies, it affects the parties' burdens of proof in two respects.  The rule relieves the plaintiff of the burden of proving actual or

23

constructive notice of the dangerous condition.  Nisivoccia,

supra, 175 N.J. at 563-64; Wollerman, supra, 47 N.J. at 429;

Bozza, supra, 42 N.J. at 360.  It also gives rise "to an

inference of negligence, shifting the burden of production to

the defendant, who may avoid liability if it shows that it did

'all that a reasonably prudent man would do in the light of the

risk of injury [the] operation entailed.'"  Nisivoccia, supra,

175 N.J. at 564-65 (quoting Wollerman, supra, 47 N.J. at 429).[5]

Thus, if the rule applies in a particular case, it substantially

alters the ordinary allocation of the burdens between the

parties.

Applied here, those principles clearly establish that the

trial court did not properly apply the mode-of-operation rule

and that the Appellate Division majority correctly stated the

scope of the rule.[6]  There is no evidence in the trial record

---

[5] The mode-of-operation charge that has been in use since 1970, Model Jury Charge (Civil) 5.20F(10), supra, neither reflects recent jurisprudence regarding the rule nor clearly explains the purpose and application of the rule.  We therefore urge the Model Civil Jury Charge Committee to review the model charge.

[6] We respectfully disagree with the concurring and dissenting Appellate Division judge's view that the mode-of-operation rule applies whenever "there is a 'risk of injury inherent in the nature of the defendant's operation,'" Prioleau, supra, 434 N.J. Super. at 592 (quoting Wollerman, supra, 47 N.J. at 429-30). Such an expansive rule would represent a departure from this Court's longstanding jurisprudence in negligence cases brought by invitees.  Moreover, we agree with the Appellate Division majority that the concurring and dissenting Appellate Division judge's reliance on Smith, supra, 94 N.J. Super. at 464-66, is

24

that the location in which plaintiff's accident occurred -- the section of the restaurant traversed by plaintiff as she walked from the counter to the restroom -- bears the slightest relationship to any self-service component of defendants' business. Instead, plaintiff's testimony establishes that she walked into the restaurant from the street, briefly stopped at the counter, and then proceeded directly to the bathroom. As described by plaintiff, the accident was unrelated to any self-service component of defendants' business.

Moreover, neither of plaintiff's theories of liability involves a self-service operation that might warrant a mode-of-operation jury instruction. The theory offered by plaintiff to justify the mode-of-operation charge, that oil and grease are used in cooking at the restaurant and that managers regularly examined the floor, establishes no nexus to customer self-service or related business operations. If the accident occurred because restaurant employees tracked oil and grease from the kitchen to the restroom area, it resulted from the preparation of food in a kitchen area off limits to patrons, a component of the business in which customers played no part.

---

misplaced. Prioleau, supra, 434 N.J. Super. at 580-81 (citing Smith, supra, 94 N.J. Super. at 464-66). As the panel that decided Smith clearly stated, Smith was not a mode-of-operation case, but a claim based on the alleged negligence of the defendant's employees. See Smith, supra, 94 N.J. Super. at 466.

25

While that evidence might support a finding that a plaintiff need not show actual or constructive notice because the condition was created by defendant or its employees, see, e.g, Smith, supra, 94 N.J. Super. at 464-66 (holding that slip and fall on greasy stairway caused by sawdust tracked onto steps by defendant's employees warranted charge), it does not implicate the mode-of-operation rule.

Nor does plaintiff's alternative theory of negligence that patrons tracked water from the outdoors into the restaurant on a rainy evening bear any relationship to self-service activities. The potential for customers to track water into a building during inclement weather is not contingent on a defendant's business model; that risk exists in virtually any facility that admits patrons from public sidewalks or parking areas into its facility. Thus, plaintiff's second theory of negligence does not support the jury charge given by the trial court.

The trial court's characterization of the "mode of operation" that prompted the jury charge in this case -- the fact that there were only six tables in the Kentucky Fried Chicken restaurant, and the presence of many people walking in and out of the restaurant on a rainy night -- is similarly unrelated to any self-service method of doing business. Indeed, those features underscore that this case involves an ordinary premises liability negligence claim and is not a mode-of-

26

operation case.  Accordingly, the trial court erroneously instructed the jury regarding the mode-of-operation rule.

B.

Plaintiff contends that even if the trial court erred in giving the mode-of-operation charge, the charge was harmless error that does not warrant a new trial.  Plaintiff's harmless error argument is premised on the notion that the jury in this case may have based its finding of negligence not on the mode-of-operation rule, but on the different standard that governs cases in which the defendant or its employees caused the dangerous condition.[7]  In plaintiff's view, by virtue of this separate charge, the jury had an independent basis on which to find negligence, and the mode-of-operation charge, even if erroneous, may have been irrelevant to the jury's verdict of liability.

Based on the record at trial, we cannot conclude that the trial court's error was harmless.  It is undisputed that there was no evidence of actual or constructive notice in this case.  Accordingly, the jury's finding of negligence was either

---

[7] Under the model charge that explains that standard, which was properly given in this case, if the jury finds that premises "was not in a reasonably safe condition and that the owner/occupier or his/her agent, servant or employee created that condition through his/her own act or omission, then" the plaintiff need not demonstrate "actual or constructive notice of the" unsafe condition.  Model Jury Charge (Civil) 5.20F(9), supra.

27

premised on the mode-of-operation charge, or on the rule set forth in Model Jury Charge (Civil) 5.20F(9), supra, regarding dangerous conditions caused by the defendant or its employees.

Only one of the plaintiff's two theories of negligence -- her contention that defendants' employees tracked cooking oil and grease from the restaurant's kitchen to the restroom area -- supported a finding that the dangerous condition was created by the defendant or its employees. If the jury concluded that the accident was caused by rain water tracked into the restaurant by a customer, then it could have found liability based only on the mode-of-operation rule. In light of plaintiff's reliance on that theory, the trial court's erroneous mode-of-operation charge may well have determined the jury's verdict on the question of liability.

Moreover, the mode-of-operation charge was given twice. The jury was instructed on both of the alternative forms set forth in Model Jury Charge (Civil) 5.20F(11), supra. The mode-of-operation rule was accordingly overemphasized in the jury instruction as a whole, and the two alternative charges, presented in succession, may have confused the jury.

Because "the jury could have come to a different result had it been correctly instructed," Viscik, supra, 173 N.J. at 18 (citing Velazquez, supra, 163 N.J. at 688), the mode-of-

28

operation charge was not harmless error.  Defendants are therefore entitled to a new trial on the issue of liability.[8]

IV.

The judgment of the Appellate Division is modified and affirmed, and the matter is remanded to the trial court for further proceedings in accordance with this opinion.

CHIEF JUSTICE RABNER; JUSTICES LaVECCHIA, ALBIN, FERNANDEZ-VINA, and SOLOMON; and JUDGE CUFF (temporarily assigned), join in JUSTICE PATTERSON's opinion.

---

[8] The mode-of-operation charge was unrelated to the jury's separate determination of damages, and accordingly, our holding has no impact on that determination.

29

SUPREME COURT OF NEW JERSEY

NO.  ___A-99___                SEPTEMBER TERM 2013

ON APPEAL FROM  _____Appellate Division, Superior Court_____


JANICE J. PRIOLEAU,

        Plaintiff-Appellant,

                v.

KENTUCKY FRIED CHICKEN, INC.,
and KFC CORPORATION,

        Defendants,

                and

YUM BRANDS, INC. and KFC U.S.
PROPERTIES, INC.,

        Defendants-Respondents.



DECIDED  _____September 28, 2015_____
_____Chief Justice Rabner_____  PRESIDING
OPINION BY  _____Justice Patterson_____
CONCURRING/DISSENTING OPINION BY_____
DISSENTING OPINION BY  _____

| CHECKLIST | AFFIRMED AS MODIFIED/ REMANDED | |
|---|---|---|
| CHIEF JUSTICE RABNER | X | |
| JUSTICE LaVECCHIA | X | |
| JUSTICE ALBIN | X | |
| JUSTICE PATTERSON | X | |
| JUSTICE FERNANDEZ-VINA | X | |
| JUSTICE SOLOMON | X | |
| JUDGE CUFF (t/a) | X | |
| TOTALS | 7 | |