NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 18-3229
_____

JOHNA GOLDSACK,
Appellant

v.

WALMART STORES, INC., AKA Walmart Supercenter; JOHN DOES 1-10 Fictitious
names representing unknown individuals; XYZ CORPS 1-10 Fictitious names
representing unknown corporations, partnerships and/or Limited Liability Companies or
other types of legal entities; 300-400 PARK PLAZA DRIVE, INC., a/k/a 300-400 Park
Plaza Dr Inc.
_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 2-16-cv-05354)
District Judge:  Hon. Susan D. Wigenton
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
January 17, 2020

Before:  JORDAN, GREENAWAY, JR., and KRAUSE, *Circuit Judges.*

(Filed January 17, 2020)
_____

OPINION*
_____

---

* This disposition is not an opinion of the full Court and, pursuant to I.O.P. 5.7,
does not constitute binding precedent.

JORDAN, *Circuit Judge*.

This appeal arises from a slip-and-fall suffered by Appellant Johna Goldsack at a store operated by Appellee Walmart Stores, Inc. ("Walmart"). On summary judgment, the District Court dismissed Goldsack's claims in their entirety, concluding that she had failed to raise a genuine dispute as to any material fact that Walmart had notice of the condition that caused her fall or that she otherwise was entitled to an inference of negligence under New Jersey's "mode-of-operation" rule. Goldsack challenges both of those holdings on appeal. We conclude that she forfeited her arguments regarding notice by failing to raise them before the District Court. We also agree with the District Court that the record in this case cannot sustain the application of New Jersey's mode-of-operation rule to her claims. Accordingly, we will affirm.

## I.    BACKGROUND

On July 3, 2015, Goldsack went to a Walmart in Secaucus, New Jersey. Upon entering the store, Goldsack walked along an aisle at the front of the store to the customer service desk to return an item. As she walked, she passed rows of checkout registers on one side, and passed an in-store McDonald's, an ice machine, and a bathroom on the other. Goldsack did not notice any liquid on the floor while walking to the customer service desk and made it there without incident.

It took Goldsack "about [a] minute" to reach the service desk. (App. at 93.) Because the desk was "short-handed," a Walmart employee asked Goldsack to retrieve a replacement for the item she intended to return, which Goldsack did. (App. at 100-01.) The item was located "to the right" when she "walk[ed] out of customer service," and

2

other than going to that area, she "didn't have to walk anywhere else." (*Id.*) After completing her return, Goldsack began walking back in the same direction from which she had first approached the service desk. This time, however, she slipped and fell on what appeared to be a puddle of water. The exact location of the accident is somewhat unclear. Goldsack herself indicated that she slipped in front of cash register number 7, between the register and the in-store McDonald's. However, there was deposition testimony from other witnesses suggesting she may have fallen closer to the ice machine, which was located in front of cash registers number 9 and number 10.[1]

Much of the argument on appeal focuses on the ice machine and its potential role in the accident. The ice machine is simply a freezer stocked with bags of ice. It is "self-service," in that customers purchase ice by removing the 10-pound bags of ice on their own and bringing the bags to any check-out register. The ice machine is stocked by Walmart employees who manually bring the bags from a freezer in the back of the store. A Walmart employee testified that "sometimes water drips from" the bags when Walmart employees stock the ice machine because "[the ice is] melting while they're putting it in[.]" (App. at 108.) Goldsack cites no evidence that the ice bags dripped during the process in which customers removed and purchased ice from the freezer.

---

[1] Based on photographs of the aisle in the record, it is clear that there is an appreciable distance between the ice machine and register number 7. However, the exact distance between the ice machine and either register number 7 or the puddle that Goldsack slipped on is not in the record.

Goldsack filed suit against Walmart in New Jersey state court alleging her July 2015 fall was caused by Walmart's negligence and that she suffered personal injuries as a result. Walmart timely removed the case to the District Court pursuant to 28 U.S.C. §§ 1441 and 1446.[2]

Walmart eventually moved for summary judgment on all of Goldsack's claims. It argued that, as a matter of law, Goldsack could not raise a triable issue of fact regarding her allegations of negligence for two reasons: (i) she lacked any evidence that Walmart had actual or constructive knowledge of the puddle that caused her fall, and thus could not establish a breach of duty under New Jersey law; and (ii) New Jersey's "mode-of-operation" rule was inapplicable to her claims. The mode-of-operation rule applies in the "self-service setting, in which customers independently handle merchandise without the assistance of employees or may come into direct contact with product displays, shelving, packaging, and other aspects of the facility that may present a risk." *Prioleau v. Kentucky Fried Chicken, Inc.*, 122 A.3d 328, 338 (N.J. 2015). The rule "gives rise to a rebuttable inference that the defendant is negligent, and obviates the need for the plaintiff to prove actual or constructive notice." *Id.* at 335. The theory underlying the rule is that it would be inequitable to require a plaintiff to prove notice "in circumstances in which, as a matter of probability, a dangerous condition is likely to occur as the result of the

---

[2] Goldsack also initially named 300-400 Park Plaza Drive, Inc. ("Park Plaza"), a New Jersey corporation, as a defendant. In its Petition for Removal, Walmart argued that Park Plaza was fraudulently joined as a defendant and its presence should not destroy the District Court's diversity jurisdiction over the dispute. It does not appear that Goldsack ever contested Walmart's assertion that Park Plaza was improperly joined, and the parties stipulated to Park Plaza's dismissal with prejudice.

4

nature of the business, the property's condition, or a demonstrable pattern of conduct or incidents." *Nisivoccia v. Glass Gardens, Inc.*, 818 A.2d 314, 316 (N.J. 2003).

Goldsack opposed Walmart's motion, but made no argument that Walmart had actual or constructive notice of the puddle that she slipped on. Instead, she was explicit that her opposition was predicated entirely on the application of the mode-of-operation rule. (*See* App. at 235 ("The question of material fact is not about Defendant's actual or constructive knowledge of the hazard. The material fact question is: where did the water puddle originate? If the answer is Defendant's self-service sale of bagged ice, the mode of operation principle applies.")). Goldsack also was specific that the aspects of Walmart's self-service ice sales that "created the slip hazard" and triggered the mode-of-operation rule were "Defendant's freezer restocking process or the customer self-service access to the freezer's bagged ice contents[.]" (App. at 236.)

After receiving full briefing from the parties, including a surreply from Goldsack, the District Court rendered its decision on Walmart's summary judgment motion. It concluded that Goldsack had failed to raise a genuine dispute as to any material fact regarding the first element of her negligence claims: breach of duty. Specifically, the Court said that it was "undisputed that Walmart did not have actual notice of the puddle[,]" (App. at 7) and that given "the lack of evidence that the water was on the floor for a prolonged period of time, a reasonable jury could not find that Walmart had constructive notice of the water on its floor." (App. at 8.) The Court concluded further that Goldsack could not invoke the mode-of-operation rule to obviate her need to raise a genuine dispute of material fact regarding Walmart's actual or constructive notice of the

5

puddle because she could not "demonstrate a nexus between Walmart's self-service freezer and her injuries." (App. at 9.) Accordingly, the District Court granted Walmart's motion.

This timely appeal followed.

## II. DISCUSSION[3]

Goldsack raises two arguments. First, she says that the District Court erred in finding no genuine dispute of material fact regarding Walmart's lack of actual or constructive notice of the puddle, given evidence in the record that a Walmart employee purportedly was aware of the puddle before the accident. Second, Goldsack asserts that she presented evidence sufficient to at least raise a genuine dispute as to whether the mode-of-operation rule applies to her claims. Both arguments lack merit.

Goldsack forfeited her first contention—that the District Court erred in its determinations with respect to actual and constructive notice—by not making any argument on those issues, or citing any evidence relevant thereto, before the District Court. "To preserve a matter for appellate review, a party must unequivocally put its position before the trial court at a point and in a manner that permits the court to consider its merits. It is well established that arguments not raised before the District Court are waived on appeal." *Garza v. Citigroup Inc.*, 881 F.3d 277, 284 (3d Cir. 2018) (internal

---

[3] The District Court had jurisdiction pursuant to 28 U.S.C § 1332. We have jurisdiction pursuant to 28 U.S.C. § 1291. "It is well established that we employ a plenary standard in reviewing orders entered on motions for summary judgment, applying the same standard as the district court." *Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 265 (3d Cir. 2014).

6

quotation marks and citations omitted). "[O]ur precedents reveal at least two characteristics that identical arguments always have. First, they depend on the same legal rule or standard. Second, the arguments depend on the same facts." *Spireas v. Comm'r of Internal Revenue*, 886 F.3d 315, 321 (3d Cir. 2018) (alteration in original and citation omitted); *see also Liberles v. Cook County*, 709 F.2d 1122, 1126 (7th Cir. 1983) ("It is a well-settled rule that a party opposing a summary judgment motion must inform the trial judge of the reasons, legal or factual, why summary judgment should not be entered. If it does not do so, and loses the motion, it cannot raise such reasons on appeal."). Walmart squarely raised the issue of its lack of notice of the puddle in its summary judgment motion. Rather than address the issue on the merits, Goldsack took the position that notice was irrelevant because the mode-of-operation rule applied to her claims. Having failed to utilize the full and fair opportunity she had before the District Court to challenge Walmart's arguments on the notice issue, she cannot now do so for the first time on appeal.[4]

Goldsack's second argument – that the mode-of-operation rule applies to her claims – also fails. For the mode-of-operation rule to apply, there must be a "nexus

---

[4] Goldsack also criticizes the District Court for not "mention[ing]" or "consider[ing]" evidence in the record that she urges demonstrates Walmart's actual or constructive knowledge of the puddle. (Opening Br. at 18.) But Goldsack's misguided criticism ignores that she failed to cite, as was her obligation to do, any such evidence in her summary judgment briefing. District Courts are not required to search through the record for evidence to support a party's assertion of the existence of a genuine dispute of material fact. *See Am. Family Life Assur. Co. of Columbus v. Biles*, 714 F.3d 887, 896 (5th Cir. 2013) ("Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment.").

between the self-service aspect of defendant's business and the plaintiff's injury." *Prioleau*, 122 A.3d at 337. Although Goldsack cites ample evidence that Walmart's ice machine was "self-service" and that bags of ice could drip when Walmart employees were stocking the machine, the record is conspicuously devoid of any evidence that anyone – Walmart employee or customer – put ice into or took ice out of the ice machine on the date of Goldsack's accident (or any other time in reasonable proximity thereto). Since the only evidence of dripping water from the ice is that it occurred during the re-stocking process, it is of particular note that there is no evidence that the machine was stocked in the time that elapsed between Goldsack's trip to the customer service counter and her walk back along the same route (or any other time in reasonable proximity thereto). Goldsack herself was certainly in a position to see the restocking, had it occurred, and she says nothing about that.

So, even assuming a relatively modest distance between the location of the ice machine and the location of the puddle on which she slipped, there is no proof of nexus between the puddle of water, the potential sources of which are myriad, and the machine. In other words, there is no evidence from which a reasonable juror could do more than speculate, particularly with the McDonald's inside the store and just a few feet away, that the source of the puddle was melting ice from the ice machine. Absent such a nexus between the ice machine, *i.e.,* the "self-service" aspect of Walmart's business, and Goldsack's accident, the mode-of-operation rule is inapplicable. *See id.* at 339 (holding that mode-of-operation rule was not implicated where source of hazard that resulted in accident was not from self-service part of the business).

8

**III.    CONCLUSION**

For the foregoing reasons, we will affirm the order of the District Court.