**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2417-19

CHARLES W. BARBATO,

    Plaintiff-Appellant,

v.

SEAN P. GALLAGHER and
BETH GALLAGHER,

    Defendants-Respondents.

_____

Submitted February 1, 2021 – Decided March 29, 2021

Before Judges Currier and Gooden Brown.

On appeal from the Superior Court of New Jersey, Law Division, Monmouth County, Docket No. L-0109-18.

William A. Wenzel, attorney for appellant.

Hoagland, Longo, Moran, Dunst & Doukas, attorneys for respondents (Chad M. Moore, of counsel; Julio Navarro, on the brief).

PER CURIAM

Plaintiff was hired by defendants to move a piano from the second floor of defendants' home to the first floor. During the move, plaintiff was standing on a grill stand attached to defendants' deck when it gave way, causing him to fall and sustain injuries. Because we are satisfied plaintiff could not demonstrate defendants breached any owed duty of care, the trial court did not err in granting summary judgment to defendants. We affirm.

Plaintiff was employed by Real Deal Moving as a piano mover, and he and two other employees came to defendants' residence on the day of these events to move the piano. Plaintiff testified that he had moved "a couple hundred" pianos.

Plaintiff and his co-employees' initial attempt to move the piano downstairs using the home's interior stairway was unsuccessful. Therefore, they took the piano back up the stairs and began discussing alternate methods to move it. Plaintiff and his co-workers asked defendant, Sean Gallagher, how the piano was originally brought into the home. Sean told them that the piano was originally moved to the second floor using the back deck. He stated that a team of six movers brought the piano up to the second floor by carrying it up the back deck stairs, lifting it over the back deck railing and carrying it into the residence.

A-2417-19

The deck was located on the second floor of the home. It was approximately twenty feet long by six feet wide and was ten feet above grade. There was a sliding glass door to enter the home from the deck. A wooden staircase led from the ground level to the deck. To the right of the stair landing on the deck was a two-foot eight-inch wide by three-foot long extension described here as the grill stand. Sean stated the grill stand was in place when they purchased the house. Defendants bought the grill from the prior owners at the time of the purchase and the grill had remained in place on the stand thereafter.

Plaintiff and his co-workers decided to move the piano using the back deck. Plaintiff stated he was aware there was a grill stand attached to the side of the deck and that a grill was on the stand.

When plaintiff and his co-workers moved the piano on to the outdoor deck, they realized that they could not move the piano with the grill on the grill stand because they could not lift the piano over the railing. Plaintiff said they needed to "K-turn" the piano, using the grill stand portion. Therefore, plaintiff and his co-workers took the grill off the grill stand. Plaintiff did not inspect the stand before he moved the piano because "we just assumed . . . everything would [be] fine." He testified that the grill weighed less than twenty pounds.

A-2417-19

Plaintiff was standing on the grill stand while moving the piano. As the men were starting to make the turn to go down the stairs, the grill stand separated from the main portion of the deck, causing plaintiff to fall and a portion of the piano to land on top of him. Plaintiff conceded that if there were four movers working that day, they would have successfully moved the piano because they could have lifted it over the rail.

Sean testified that he hired a home inspector to assess any problems with the residence prior to its purchase. The home inspector did not tell defendants the grill stand was problematic, nor did the inspector tell defendants there was any defective construction regarding the deck or grill stand. Defendants did not alter the configuration of the back deck, the stairs or the grill stand from the time they purchased the home in 2011 to the time of plaintiff's accident in 2016. Sean testified that he had never seen anyone stand on the grill stand.

Plaintiff instituted suit against defendants, alleging they were negligent in the maintenance of their premises and the outdoor deck and stairs were in an unsafe condition, causing him, a business invitee, to sustain personal injuries.

During discovery, plaintiff retained an engineering firm to review the structural aspects of defendants' deck. The engineer noted a construction permit

4

indicated the deck was constructed in 1979. He concluded the grill stand was constructed sometime thereafter in the ensuing thirty years.

Plaintiff's expert opined that "deck screws should not have been used as the permanent fasteners of the deck extension to the main deck[]" because they "were not capable of carrying [the] load." He further stated the "deck screws were particularly vulnerable to the effects of corrosion and deterioration compared to more commonly used fastening alternatives for this type of connection."

The engineer stated a different kind of bolt should have been used to fasten the grill stand to the main deck. One advantage of a through-bolt was they were "visible for observation and examination." In contrast, the deck screws that were used "conceal their load carrying element. The interface between the screw treads and the wood is hidden from view and thus the deterioration goes unnoticed."

Defendants moved for summary judgment, asserting they did not owe plaintiff a duty of care because plaintiff was hired as a professional piano mover and defendants did not supervise him or oversee the work being done. In addition, defendants contended they had no actual or constructive knowledge of the alleged dangerous condition of the grill platform.

5

In opposition, plaintiff asserted defendants had a duty of reasonable care to guard against dangerous conditions on their property that they knew or should have known about. That duty included performing a reasonable inspection to discover latent dangerous conditions. Plaintiff also contended the doctrine of res ipsa loquitor was applicable under these circumstances because the deck was in defendants' exclusive control.

The trial judge noted the duty owed to a business invitee but also observed that the analysis of "whether a duty of care exists at all" required a balancing of several factors as enunciated in Hopkins v. Fox & Lazo Realtors, 132 N.J. 426 (1993). In concluding defendants did not owe plaintiff a duty, the court stated:

> In this case, [d]efendants hired a professional moving company to move their piano. The status of the movers as business invitees on [d]efendants' property weighs in favor of [d]efendants owing [p]laintiff a duty of care. However, the nature of the attendant risk was risk of injury while moving the piano, which all movers assume when engaging in their chosen profession. In addition, the opportunity and ability to exercise care rested with [p]laintiff and his co-workers, who were professional movers and entrusted by [d]efendants to carry out their work in a safe and professional manner. Consequently, both of these factors weigh in favor of finding that [d]efendants did not owe [p]laintiff a duty of care. Finally, the public interest in the proposed solution weighs in favor of finding no duty of care, as the public interest is generally furthered by not subjecting individuals to liability stemming from an unknown defect in their property that could not have

6

been discovered via reasonable inspection, as is the case here.

The court granted defendants summary judgment on January 22, 2020. This appeal followed.

We review the grant of summary judgment de novo, applying the same legal standard as the trial court. Green v. Monmouth Univ., 237 N.J. 516, 529 (2019) (citation omitted). Therefore, we consider "whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party in consideration of the applicable evidentiary standard, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party." Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 523 (1995).

Summary judgment must be granted "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law." R. 4:46-2(c). "If there is no genuine issue of material fact, we must then 'decide whether the trial court correctly interpreted the law.'" DepoLink Ct. Reporting & Litig. Support Servs. v. Rochman, 430 N.J. Super. 325, 333 (App. Div. 2013) (citations omitted). We review issues of law de novo and accord no deference

to the trial judge's conclusions on issues of law. <u>Nicholas v. Mynster</u>, 213 N.J. 463, 478 (2013).

On appeal, plaintiff asserts the trial court erred in finding defendants did not owe him a duty of care. He further contends the public interest weighs in favor of the imposition of a duty.

"To sustain a cause of action for negligence, a plaintiff must establish four elements: (1) a duty of care, (2) a breach of that duty, (3) proximate cause, and (4) actual damages." <u>Townsend v. Pierre</u>, 221 N.J. 36, 51 (2015) (citation omitted). "The plaintiff bears the burden of establishing those elements 'by some competent proof.'" <u>Davis v. Brickman Landscaping, Ltd.</u>, 219 N.J. 395, 406 (2014) (citing <u>Buckelew v. Grossbard</u>, 87 N.J. 512, 525 (1981)).

The determination of duty is "generally a matter for a court to decide." <u>Acuna v. Turkish</u>, 192 N.J. 399, 413 (2007). "The . . . imposition of a duty of care and the formulation of standards defining such a duty derive from considerations of public policy and fairness." <u>Hopkins</u>, 132 N.J. at 439 (citing <u>Kelly v. Gwinnell</u>, 96 N.J. 538, 552 (1984)). To determine whether a person owes a duty of reasonable care, our courts "ordinarily consider four factors: 'the relationship of the parties, the nature of the attendant risk, the opportunity and ability to exercise care, and the public interest in the proposed solution.'"

of Narleski v. Gomes, 244 N.J. 199, 223 (2020) (quoting Hopkins, 132 N.J. at 439).

We disagree with the trial court's determination that defendants did not owe a duty of care. However, we agree with the grant of summary judgment because plaintiff did not establish a breach of that duty.

In turning to the relationship of the parties, plaintiff asserted, and the trial court agreed, that he was a business invitee. An individual is considered a business invitee when the primary purpose for their presence on the property is to confer a benefit upon the property owner. See Filipowicz v. Diletto, 350 N.J. Super. 552, 558 (App. Div. 2002).

The duty owed to a business visitor "'encompasses the duty to conduct a reasonable inspection to discover latent dangerous conditions.'" Prioleau v. Kentucky Fried Chicken, Inc., 223 N.J. 245, 257 (2015) (quoting Hopkins, 132 N.J. at 434). An invitee "must prove, as an element of the cause of action, that the defendant had actual or constructive knowledge of the dangerous condition that caused the accident." Nisivoccia v. Glass Gardens, Inc., 175 N.J. 559, 563 (2003). Here, plaintiff's failure to show actual or constructive knowledge of the dangerous condition is fatal to his claim.

Defendants purchased the house in 2011. Prior to the transaction, a home inspector inspected the entire home including the deck and grill stand. The inspection did not disclose any issues or defects concerning the grill stand. Defendants did not make any changes or do any construction to the deck or the grill stand between their purchase of the property and plaintiff's accident in 2016.

Plaintiff's own expert stated in his report that the deterioration of the screws connecting the grill stand to the deck was not visible. Prior inspections had not revealed the defective screws. Therefore, plaintiff has not demonstrated defendants had actual or constructive knowledge of any hazardous condition pertaining to the grill stand.

Plaintiff cannot show defendants breached their duty of care to him. Therefore, the grant of summary judgment was warranted.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2417-19