**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4701-18T3

WILLIAM OLSON,

    Plaintiff-Appellant,

v.

35 LAND CLUB, LLC, THIRTY
FIVE PLAZA CORP., THIRTY
FIVE PLAZA ASSOCIATES, LLC;
HOULIHAN'S RESTAURANTS,
INC., HOULIHAN'S
RESTAURANT GROUP, INC.,
HOULIHAN'S/BERGEN COUNTY,
INC., STARBUCKS
CORPORATION, STARBUCKS
COFFEE COMPANY; A.C.E.
RESTAURANT GROUP INC., and
PARAMUS RESTAURANT, LLC,

    Defendants-Respondents.

_____

Argued telephonically September 22, 2020 –
Decided October 7, 2020

Before Judges Yannotti, Haas and Mawla.

On appeal from the Superior Court of New Jersey, Law
Division, Bergen County, Docket No. L-6129-17.

Jared Apner argued the cause for appellant (Law Offices of Jeffrey S. Hasson, PC, attorneys; Jared Apner, on the briefs).

Ian C. Doris argued the cause for respondents 35 Land Club LLC, Thirty Five Plaza Corp. and Thirty Five Plaza Associates, LLC (Keenan & Doris, attorneys; Mary Beth Ehalt, on the brief).

John Goworek argued the cause for respondents A.C.E. Restaurant Group, Inc., and Paramus Restaurant, LLC (Hendrzak & Lloyd, attorneys; John Goworek, on the brief).

Michelle A. Cohen-Murphy argued the cause for respondent Starbucks Corporation and Starbucks Coffee Company (The Tierney Law Group, LLC, attorneys; Michelle A. Cohen-Murphy, on the brief).

PER CURIAM

Plaintiff William Olson appeals from an order entered by the Law Division on May 24, 2019, which granted summary judgment to defendants and dismissed plaintiff's complaint. We affirm.

I.

We briefly summarize the relevant facts. Sometime during the morning of August 13, 2016, plaintiff parked his car in a lot of the 35 Plaza shopping center (35 Plaza) in Paramus. 35 Plaza Club, LLC and Thirty-Five Plaza Associates, LLC (collectively, Thirty-Five Plaza) are the owners of the shopping

center.  Thirty-Five Plaza leased space in 35 Plaza to Paramus Restaurant, LLC (Paramus Restaurant) for the operation of the Houlihan's restaurant, and to Starbucks Corporation (Starbucks) for the operation of a coffee shop.[1]

Plaintiff had previously visited 35 Plaza at least fifty times and had patronized both the Houlihan's and Starbucks.  On the day of the incident, it was hot and sunny, although it had rained the night before.   At around 10:30 a.m., plaintiff's wife went into Starbucks to pick up an order and plaintiff waited for her in their vehicle.

While he was waiting, plaintiff gathered some items in his car to throw away.  He walked towards a garbage can on the sidewalk in front of Starbucks. He slipped and fell, allegedly on a "wet/slippery/oily substance" on the sidewalk between his car and the garbage can.  Plaintiff sustained injuries that required medical treatment.

Plaintiff later filed a complaint in the Law Division and named Thirty-Five Plaza, Houlihan's, and Starbucks as defendants.  Plaintiff alleged he suffered personal injuries as a result of defendants' negligence.  He claimed,

---

[1] We note that A.C.E. Restaurant Group, Inc. and ACE Restaurant Group, Inc. were involved in the operation of the Houlihan's restaurant in the 35 Plaza shopping center.  We refer to these parties and Paramus Restaurant collectively as "Houlihan's."  We also note that Starbucks does business as Starbucks Coffee Company.

among other things, that defendant caused a dangerous and hazardous condition to exist and failed to provide proper safeguards and warnings of the condition. Thereafter, defendants filed answers denying liability and asserting various crossclaims. The parties then engaged in discovery and several witnesses were deposed.

Plaintiff testified he did not know when the alleged condition was first created, where it came from, what it consisted of, or who created it. He said he did not know how long the wet, oily substance was on the ground before he fell. He stated that, after he fell, he was "soaking wet" and that the ground was "wet, slimy, greasy, [and] . . . pretty nasty." Plaintiff also stated that when his wife went into Starbucks, he observed her walk without any difficulty across the same part of the sidewalk where he fell.

Plaintiff's wife testified that she frequently went to the Starbucks in 35 Plaza. She said that in visits to the shopping center prior to plaintiff's accident, she had never seen any problem on the sidewalk. She also said she did not make any observations of the accident site before plaintiff fell.

Katherine Conti, the manager of the Starbucks, testified that she was working on the day of plaintiff's accident. She observed rainwater in the area

where plaintiff fell and informed Houlihan's general manager but could not recall if this was before or after plaintiff's accident.

Conti stated, "I just asked him about the water that was coming out. And we had discussed that it could have been the rain water coming out from there." Conti testified that no one complained about any condition, she did not observe any oily substance in the area where plaintiff fell, and she was not aware of any dangerous conditions on the premises.

Paul Casson testified he has been employed by the property manager for 35 Plaza for more than seventeen years. He inspects the property at least three times per week, usually on Mondays, Wednesdays, and Fridays. Casson said Thirty-Five Plaza is responsible for maintaining the sidewalks in front of the stores, while tenants are responsible for maintaining their entrances and a few feet in front of the entrances. He stated that Thirty-Five Plaza also is responsible for maintaining the garbage cans on the premises, including the garbage can in front of Starbucks.

Casson further testified he inspected the area where plaintiff fell the day before the accident. During that inspection, he did not observe any liquid at that location. He did not observe any liquid in the area during his next inspection two days after the accident.

5

Casson noted there are two doors in the area between Houlihan's and Starbucks. One door leads into Houlihan's and the other door leads to the roof above Houlihan's, where pipes are located. Casson stated that Houlihan's maintained the keys for both doors and that he and his colleagues did not have access to those entrances.

Alberto Nava testified that since April 2016, he had been the general manager of the Houlihan's restaurant in 35 Plaza. Nava first learned of plaintiff's accident when he received a letter from plaintiff's attorney. He testified that the manager on duty at Houlihan's was responsible for inspecting the area where plaintiff fell, and the location plaintiff claimed was the source of the wet, oily substance on the pavement.

Nava stated that he inspects the premises every time he goes to work. He did not notice liquid in the area where plaintiff fell. He also said no employees from Houlihan's, Starbucks, or Thirty-Five Plaza told him they had seen liquid in that area. Nava also did not know of any previous slip and fall accidents at that location.

Peter Cosentino, Houlihan's Director of Development, testified that Houlihan's did not have notice of any dangerous condition at the site where plaintiff said he fell. He said Houlihan's did not have any formal inspection

protocol. He stated, however, that "[i]t's just a common sense [to] walk around [and] identify things that would be out of the ordinary or cause a possible safety risk or something that might need attention."

Harold Tepper, P.E. was plaintiff's liability expert. He issued three reports. In his first report, Tepper stated that plaintiff's accident was caused, individually or in combination, by a "hidden hazard" in the form of an "oily" and slippery substance on the sidewalk, a lack of warnings or barricades, and the absence of "a direct connection" between the building's discharge pipe and the property's sanitary sewer system.

In making these findings, Tepper reviewed eight photographs of the accident site "taken on various dates after the incident[,]" eight photographs of the location taken on January 9, 2017, and an interview with the plaintiff. Tepper concluded that:

> Oily and discolored water (a recognized component of domestic sewage) had flowed out of the . . . cast iron discharge pipe at some point prior to the incident and had filled the ground in front of the pipe's discharge end.
>
> As the volume of oily water rose in the area in front of the discharge end of the cast iron pipe the water eventually rose to a level wherein the oily water flowed onto the sidewalk.

The oily water then flowed on the top surface of the sidewalk where it ponded in a generally rectangular area in the center area of the sidewalk, which area was defined by a dark colored stained area of the sidewalk's top surface.

The area of sidewalk with a dark colored top surface extended in a general north-south direction of the middle portion of the sidewalk and was located directly opposite to [plaintiff's] east to west path of travel.

The dark colored area of sidewalk extended in a north-south direction on the sidewalk and extended in front of the buildings occupied by Houlihan's and Starbuck[s] and the recess between the two buildings.

The dark colored surface on the top of the sidewalk was directly caused by the oily water that flowed out of the cast iron pipe located within the recess.

The oily water ponded in the area of sidewalk where the incident took place and eventually, over time, caused the area of sidewalk to become stained and discolored.

Tepper asserted that on January 9, 2017, the sidewalk was stained but there was no oily water present. According to Tepper, the sidewalk was "improperly maintained" and this was a "violation of generally accepted safety standards and/or practices . . ."

Tepper stated the property owner had "allowed the discharge end of a cast iron pipe . . . to exist []without being connected to the on-site sanitary sewer

8

system[.]"  He said this allowed the discharge of an oily water substance, which flowed onto the area of the sidewalk where plaintiff slipped and fell.

Tepper also stated that Houlihan's and Starbucks "allowed an oily and slippery top surface . . . to exist at the area of the sidewalk" where plaintiff fell. Tepper said the "sidewalk was hazardous" because of the "'oily' and slippery top surface" and the "[l]ack of warnings and/or barricades."

In his second report, Tepper stated that he again inspected the premises on November 28, 2018, and reviewed certain photographs of the accident site. He reiterated his previous conclusions and made the following additional findings:

> The "hidden hazard" that caused [plaintiff] to become injured . . . in the form of an "oily" and slippery top surface at a portion of the sidewalk's pedestrian path of travel also was created by a source of an oily and slippery liquid . . . that was in addition to the source of the liquid noted in [the previous r]eport.  The additional source was oily and slippery liquid that emanated from an "open" cleanout of the property's storm water management system located in the upper platform of a recess between the Houlihan's and Starbucks buildings.
>
> The right side of the top of an "upper" concrete platform where the . . . aforementioned additional source is located . . . was, upon information and belief, to have been periodically cleaned of stains and discolorations (caused by the oily and slippery liquid from the additional source – the open cleanout of the property's

storm water management system) by the property owner or its agents.

In his third report, Tepper noted that defendants and their experts had provided additional information. He disputed certain findings and conclusions by defendants' experts, as well as statements other individuals made in their depositions. He reaffirmed the findings and conclusions in his previous reports.

Thirty-Five Plaza's liability expert, John Scillia, P.E., stated that he had inspected the property, and the exposed pipe showed no indication it was an active part of the building's plumbing system or the site's storm water and wastewater conveyance system. Starbucks' liability expert, Charles J. Schaffer, P.E., concluded that Starbucks was not the source of whatever liquid was allegedly present at the accident site when plaintiff fell.

Houlihan's liability expert, Walter M. Wysowaty, P.E., stated that he inspected the property on November 28, 2018. Among other things, Wysowaty stated that the source of the discharge had not been identified and the drainage pipe was in the common area of the property.

Wysowaty added that Tepper had assumed, without any factual basis, that the pipe was part of the building's sanitary-sewer system. He also stated there was no evidence any defendant had actual or constructive notice of a hazardous

10

condition on the sidewalk. He opined, however, that if there was such a condition, it was Thirty-Five Plaza's sole responsibility.

After the close of discovery, Houlihan's filed a motion for summary judgment and a motion to bar Tepper's reports on the ground they were net opinions. Thereafter, Starbucks and Thirty-Five Plaza also filed motions for summary judgment. Plaintiff opposed defendants' motions and filed a motion to bar Scillia's expert report. Thirty-Five Plaza then filed a cross-motion to bar Tepper's report and the report of plaintiff's economic and vocational experts.

On May 24, 2019, Judge Mary F. Thurber heard oral argument on the motions and placed her decisions on the record. The judge determined that Tepper's reports must be barred because they were net opinion. The judge stated there was no evidence establishing a link between the alleged wet and oily discharge on the sidewalk and the drainpipe. Furthermore, the judge noted that plaintiff did not establish that the pipe was connected to the building's sanitary sewer system.

Judge Thurber also stated there was no evidence to show that an overflow of the building's storm water system was the cause of the wet, oily substance that was allegedly on the sidewalk when plaintiff fell. The judge found Tepper's conclusions were based on "jumps in logic," and lacked support in the evidence.

11

In addition, the judge stated that plaintiff failed to present sufficient evidence to show any defendant had actual or constructive notice of the alleged dangerous condition. The judge noted that Conti testified she observed water traveling in front of the garbage can before plaintiff's accident, and that plaintiff had presented photographs in which the pavement in the area appears to be discolored.

Judge Thurber found this evidence was insufficient to raise a genuine issue of material fact as to whether defendants had actual or constructive notice of the alleged dangerous condition. Judge Thurber entered orders granting defendants' motions for summary judgment and the motions to bar Tepper's expert reports. The judge also denied the motions to bar the reports of plaintiff's economic and vocational experts and Scillia's report. This appeal followed.

## II.

On appeal, plaintiff argues that the motion judge erred by finding Tepper's reports were net opinions. Plaintiff contends there was sufficient factual support for Tepper's opinion that there was a wet, oily substance on the pavement in front of the Starbucks and the Houlihan's restaurant, which emanated from a drainpipe on the building or an overflow of the building's storm water system.

"The admission or exclusion of expert testimony is committed to the sound discretion of the trial court." Townsend v. Pierre, 221 N.J. 36, 52 (2015) (citing State v. Berry, 140 N.J. 280, 293 (1995)). On appeal, we give deference to "a trial court's grant or denial of a motion to strike expert testimony" and review that decision applying an "abuse of discretion standard." Id. at 52-53 (citing Pomerantz Paper Corp. v. New Cmty. Corp., 207 N.J. 344, 371-72 (2011)).

Rules of Evidence 702 and 703 "frame [the] analysis" of whether expert testimony is admissible. Id. at 53. Rule 702 states that:

> (1) the intended testimony must concern a subject matter that is beyond the ken of the average juror; (2) the field testified to must be at a state of the art such that an expert's testimony could be sufficiently reliable; and (3) the witness must have sufficient expertise to offer the intended testimony.
>
> [Ibid. (citing Creanga v. Jardal, 185 N.J. 345, 355 (2005); N.J.R.E. 702).]

Furthermore, Rule 703 states that an expert's opinions be based upon:

> facts or data derived from (1) the expert's personal observations, or (2) evidence admitted at the trial, or (3) data relied upon by the expert which is not necessarily admissible in evidence but which is the type of data normally relied upon by experts.
>
> [Ibid. (citing Polzo v. Cty. of Essex, 196 N.J. 569, 583 (2008); N.J.R.E. 703).]

13

Rule 703 thus "forbids the admission into evidence of an expert's conclusions that are not supported by factual evidence or other data." Polzo, 196 N.J. at 583. An expert must "'give the why and wherefore' that supports the opinion, 'rather than a mere conclusion.'" Borough of Saddle River v. 66 E. Allendale, LLC, 216 N.J. 115, 144 (2013) (quoting Pomerantz Paper Corp., 207 N.J. at 372).

"The net opinion rule is not a standard of perfection." Townsend, 221 N.J. at 54. "An expert's proposed testimony should not be excluded merely 'because it fails to account for some particular condition or fact which the adversary considers relevant.'" Ibid. (quoting Creanga, 185 N.J. at 360).

However, experts must "be able to identify the factual bases for their conclusions, explain their methodology, and demonstrate that both the factual bases and the methodology are scientifically reliable." Landrigan v. Celotex Corp., 127 N.J. 404, 417 (1992).

Here, Judge Thurber noted Tepper had cited two sources for the wet, oily substance that was allegedly on the sidewalk at 35 Plaza where plaintiff fell. Tepper first stated the source of the substance was a discharge pipe that was not connected to the sanitary sewer system.

After another inspection and the review of other information, Tepper opined the substance came from an overflow of the building's storm water system. Judge Thurber found there was insufficient evidence to support either opinion.

In her decision, the judge observed that while Tepper had knowledge as to the manner in which sanitary sewer and storm water systems function, his opinions as to the source of the alleged wet, oily substance were conclusions drawn "by leaps in logic" unsupported by evidence. The record supports the judge's determination that Tepper's reports were inadmissible net opinions.

On appeal, plaintiff contends Tepper had sufficient factual support for his conclusions and the judge erred by concluding Tepper had to identify the specific source of the oily substance allegedly on the sidewalk where he fell. Plaintiff contends Tepper only had to identify the general area from which the substance came. We disagree. In his reports, Tepper stated there were two potential sources for the wet, oily substance. There was, however, no evidence to support either claim.

Our Supreme Court has observed "an expert's bare opinion that has no support in factual evidence or similar data is a mere net opinion which is not admissible and may not be considered." Pomerantz, 207 N.J. at 372. We

A-4701-18T3

conclude the judge did not err by finding that Tepper's reports concerning the source of the substance at issue were inadmissible net opinions.

## III.

Next, plaintiff argues the motion judge erred by granting defendants' motion for summary judgment. We disagree.

An appellate court reviews a ruling of a summary judgment motion "de novo." Davis v. Brickman Landscaping, Ltd., 219 N.J. 395, 405 (2014). In doing so, we "apply the same standard governing the trial court . . . ." Ibid. (quoting Murray v. Plainfield Rescue Squad, 210 N.J. 581, 584 (2012)). We "must review the competent evidential materials submitted by the parties to identify whether there are genuine issues of material fact and, if not, whether the moving party is entitled to summary judgment as a matter of law." Bhagat v. Bhagat, 217 N.J. 22, 38 (2014) (citing Brill v. Guardian Life Ins., 142 N.J. 520, 540 (1995); R. 4:46-2(c)).

"[A]n issue of fact is genuine only if, considering the burden of persuasion at trial, the evidence submitted by the parties on the motion, together with all

A-4701-18T3

legitimate inferences therefrom favoring the non-moving party, would require submission of the issue to the trier of fact." Id. at 38 (quoting R. 4:46-2(c)).

"If there exists a single, unavoidable resolution of the alleged disputed issue of fact, that issue should be considered insufficient to constitute a 'genuine' issue of material fact for purposes of Rule 4:46-2." Brill, 142 N.J. at 540 (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986)). "[W]hen the evidence 'is so one-sided that one party must prevail as a matter of law' . . . the . . . court should not hesitate to grant summary judgment." Ibid. (quoting Liberty Lobby, Inc., 477 U.S. at 252).

"[I]t is ordinarily a plaintiff's burden to prove negligence, and . . . it is never presumed." Khan v. Singh, 200 N.J. 82, 91 (2009) (citations omitted). "To sustain a cause of action for negligence, a plaintiff must establish four elements: (1) a duty of care, (2) a breach of that duty, (3) proximate cause, and (4) actual damages.'" Townsend, 221 N.J. at 51 (quoting Polzo, 196 N.J. at 584).

"A prerequisite to recover on a negligence theory is a duty owed by defendant to plaintiff." Strachan v. John F. Kennedy Mem'l Hosp., 109 N.J. 523, 529 (1988) (citation omitted). "When a person alleges that a landowner has acted negligently, the existence of a duty by a landowner to exercise reasonable care to third persons is generally governed by the status of the third person –

guest, invitee, or trespasser – particularly when the legal relationship is clearly defined." Robinson v. Vivirito, 217 N.J. 199, 209 (2014) (citations omitted).

A business invitee is a "person . . . invited on the premises for purposes of the owner that often are commercial or business related." Hopkins v. Fox & Lazo Realtors, 132 N.J. 426, 433 (1993). "Generally, a proprietor's duty to his invitee is one of due care under all the circumstances." Prioleau v. Kentucky Fried Chicken, Inc., 223 N.J. 245, 257 (2015) (quoting Bozza v. Vornado, Inc., 42 N.J. 355, 359 (1964)).

"The duty of due care to a business invitee includes an affirmative duty to inspect the premises and 'requires a business owner to discover and eliminate dangerous conditions, to maintain the premises in safe condition, and to avoid creating conditions that would render the premises unsafe.'" Troupe v. Burlington Coat Factory Warehouse Corp., 443 N.J. Super. 596, 601 (App. Div. 2016) (quoting Nisivoccia v. Glass Gardens, Inc., 175 N.J. 559, 563 (2003)).

"[A]n invitee seeking to hold a business proprietor liable in negligence 'must prove, as an element of the cause of action, that the defendant had actual or constructive knowledge of the dangerous condition that caused the accident.'" Prioleau, 223 N.J. at 257 (quoting Nisivoccia, 175 N.J. at 563). The absence of actual or constructive notice of a dangerous condition "is fatal to [a] plaintiff's

18

claims of premises liability." Arroyo v. Durling Realty, LLC, 433 N.J. Super. 238, 243 (App. Div. 2013).

"A defendant has constructive notice when the condition existed 'for such a length of time as reasonably to have resulted in knowledge and correction had the defendant been reasonably diligent.'" Troupe, 443 N.J. Super. at 602 (quoting Parmenter v. Jarvis Drug Stores, Inc., 48 N.J. Super. 507, 510 (App. Div. 1957)). "Constructive notice can be inferred in various ways[,]" including "[t]he characteristics of the dangerous condition giving rise to the slip and fall . . . or eyewitness testimony . . . ." Ibid. (internal citations omitted) (citing Tua v. Modern Homes, Inc., 64 N.J. Super. 211, 220 (App. Div. 1960); Grzanka v. Pfeifer, 301 N.J. Super. 563, 574 (App. Div. 1997), certif. denied, 154 N.J. 607 (1998)).

Plaintiff argues he presented sufficient evidence to raise a genuine issue of material fact as to whether defendants had actual or constructive notice of the alleged dangerous condition at 35 Plaza. In support of this argument, plaintiff relies primarily upon Conti's testimony.

Plaintiff notes that Conti testified "she had observed the area between the Starbucks and Houlihan's and saw what she assumed was water traveling in front of the garbage can more than once prior to the accident." Conti asserted,

however, that she informed Nava of this condition but could not recall whether she did so prior to plaintiff's accident.

Conti stated that she did not notice any discoloration of the sidewalk. She also stated that, before plaintiff's accident, no one told her that they had seen any liquid or substances on the sidewalk in front of Starbucks or in the area between Starbucks and Houlihan's. Conti's testimony failed to establish that there was a dangerous condition on the sidewalk or that the condition existed for a sufficient period of time to place a reasonable commercial property owner on notice of its existence.

We reject plaintiff's contention that Conti's testimony was sufficient to raise a genuine issue of material fact on the issue of notice. The other evidence also supports the conclusion that plaintiff failed to raise a genuine issue of material fact as to whether defendants had actual or constructive notice of the alleged dangerous condition at the accident site.

Nava, Houlihan's general manager, testified that he had never seen any liquid or substance in this area before the date of plaintiff's accident. Nava stated that, after plaintiff's accident and on more than one occasion, he would see liquid in the area after it rained. Cosentino, director of facilities for A.C.E., testified

that he was "never made aware of any condition" in the area that he would have had to clean up or "deal with."

In addition, Casson, the property manager for Thirty-Five Plaza, testified that when he inspected the area the Monday after plaintiff's accident, he did not notice any staining, discoloration, or liquid in the area. He stated he had never seen any such condition prior to, or after, plaintiff's accident.

Furthermore, plaintiff's wife stated that she frequently went to the Starbucks in the 35 Plaza shopping center. She stated that she never saw any problem on the sidewalk in visits before plaintiff's accident.

We also reject plaintiff's assertion that photographs showing discoloration of the pavement support the inference that defendants had actual or constructive notice of the alleged dangerous condition. As defendants point out, the discoloration does not support the inference that there was a greasy or slippery condition at the site at any time before plaintiff's accident.

On appeal, Houlihan's and Starbucks contend they did not owe plaintiff a duty of care because plaintiff fell when he was approaching a trash can that was under the control of Thirty-Five Plaza. In addition, 35 Land Club asserts it does not own or control and was not responsible for the maintenance and repair of the area where plaintiff fell. In view of our decision that the trial court did not

err by granting summary judgment in favor of defendants on other grounds, we need not address these issues.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-4701-18T3