**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. <u>R.</u> 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0262-23

PAULA RUSSO,

      Plaintiff-Respondent,

v.

GARDEN COMMERCIAL
PROPERTIES, and GARDEN
HOMES,

      Defendants,

and

C&M LANDSCAPE
CONTRACTORS, INC.,
MULCH EXPRESS USA, LLC
d/b/a/ XTREME SNOW PROS,
J&A LANDSCAPE AND SNOW
SERVICES, and BERNARD
PLAZA ASSOCIATES,

      Defendants-Appellants.

_____

Argued November 18, 2024 – Decided January 28, 2025

Before Judges Gilson, Firko, and Bishop-Thompson.

On appeal from the Superior Court of New Jersey, Law Division, Mercer County, Docket No. L-0112-20.

Daniel S. Jahnsen argued the cause for appellants (Dorf Nelson & Zauderer LLP, attorneys; Daniel S. Jahnsen, on the briefs).

Chinsu Shajan argued the cause for respondent (Stark & Stark, PC, attorneys; Chinsu Shajan and Domenic B. Sanginiti, Jr., of counsel and on the brief).

PER CURIAM

Plaintiff Paula Russo slipped on ice in a commercial parking lot, fell, and injured herself. She sued three defendants: Bernard Plaza Associates, LLC (Bernard Plaza), the owner of the commercial property; J&A Landscaping & Snow Services (J&A Services), the contractor responsible for snow removal and ice treatment; and Xtreme Snow Pros (Xtreme), the subcontractor responsible for removing snow and treating ice.

Following trial, a jury found each defendant liable and apportioned their responsibility for plaintiff's damages. Defendants now appeal from the resulting judgment and certain evidentiary rulings, arguing that the trial court failed to charge the jury with proper instructions and made several incorrect rulings on evidentiary issues. Having reviewed the record and governing law, we reject defendants' arguments and affirm the judgment.

A-0262-23

I.

Defendant Bernard Plaza owns a commercial property in Basking Ridge known as Dewy Meadow Village.  On October 25, 2017, Bernard Plaza entered into a contract (the Contract) with defendant J&A Services for snow removal at Dewy Meadow Village for the 2017-18 winter season.  The Contract explained the services J&A Services was to provide.  Thereafter, J&A Services entered into a subcontractor agreement (the Subcontractor Agreement) with defendant Xtreme for the snow removal work to be performed at Dewy Meadow Village. The Subcontractor Agreement explained the scope of work Xtreme was to provide.

On March 7, 2018, a winter storm hit New Jersey, including Basking Ridge.  Between 1:00 a.m. and 8:30 p.m., approximately fourteen inches of snow fell, with most of the snow falling between noon and 5:00 p.m.  The snow stopped completely by 8:30 p.m.

On March 8, 2018, the day after the winter storm, plaintiff Paula Russo drove to her place of work, which was located at Dewy Meadow Village.  She parked her car in the parking lot and exited her car.  At approximately 7:30 a.m., while walking through the parking lot, she slipped and fell, resulting in injuries. She described the parking lot as "plowed but not salted" and "icy."  Thereafter,

3

plaintiff sued defendants, alleging that they had been negligent in failing to treat the icy conditions in the parking lot.

The parties conducted discovery. Before trial, defendants moved to take judicial notice that a State of Emergency had been declared on March 6, 2018, concerning the anticipated winter storm, and that the declaration had lasted until March 13, 2018. The court denied that motion. Plaintiff later moved in limine to bar any reference to the State of Emergency, arguing that it would be prejudicial and confusing to the jury.

On July 19, 2023, the court granted plaintiff's motion, reasoning that the State of Emergency was not relevant, did not change the scope of duty owed by defendants, and did not affect the comparative negligence issues. The court also noted that the jury would be considering evidence concerning the nature and intensity of the storm, including testimony from a weather expert. Additionally, the court reasoned that even if there was any probative value to the State of Emergency, "it would be substantially outweighed by . . . potential confusion or prejudice."

At that same July 19, 2023 hearing, the court ruled on several other in limine motions. The court denied defendants' motion to bar any reference to the Contract and the Subcontractor Agreement. In making those rulings, the court

A-0262-23

reasoned that the Contract and Subcontractor Agreement were relevant to show the expectations concerning each defendants' responsibilities for snow and ice removal and treatment and, therefore, would assist the jury in apportioning liability. The court also ruled that plaintiff was not permitted to introduce evidence related to or question witnesses on the non-renewal of Xtreme's subcontract for snow removal after the 2017-18 season. The court also ruled that testimony about whether one party was satisfied with another party's performance generally was permissible.

Trial commenced on July 24, 2023. During trial, defendant sought to introduce a photo taken of the parking lot that had been produced by plaintiff during discovery. The court excluded the photo, reasoning that plaintiff had not taken the photo, and it could not be authenticated.

Trial concluded on August 1, 2023. At the charge conference, the trial court ruled that Model Civil Jury Charge 5.20F(5), which addresses a landowner's duties owed to invitees, was applicable and should be given to the jury. See Model Jury Charges (Civil), 5.20F(5), "Invitee—Defined and General Duty Owed" (approved Dec. 1988). Defendants argued that Model Civil Jury Charge 5.20B(B)(2)(b), which addresses the liability of a commercial property owner for snow and ice accumulation on sidewalks abutting the property, should

also be charged. See Model Jury Charges (Civil), 5.20B(B)(2)(b), "Liability of Owner of Commercial Property for Defects, Snow and Ice Accumulation and Other Dangerous Conditions in Abutting Sidewalks" (rev. Nov. 2022). The trial court denied the request to give Model Civil Jury Charge 5.20B(B)(2)(b), reasoning that the charge specifically mentioned sidewalks, which were not at issue in this case. The court also noted that, unlike the matter under review, the cases cited by defense counsel concerned conditions during an ongoing storm.

After receiving the jury charge and deliberating, the jury returned a verdict finding each defendant liable to plaintiff. The jury found that plaintiff's total damages were $466,000, and it apportioned the comparative negligence for plaintiff's damages, finding Bernard Plaza responsible for twenty percent, J&A Services responsible for twenty-seven percent, Xtreme responsible for forty-one percent, and plaintiff responsible for twelve percent.

On August 15, 2023, the trial court entered a final judgment. That judgment included $23,150.44 in pre-judgment interest, resulting in a molded judgment of $97,830.09 against Bernard Plaza, $132,070.62 against J&A Services, and $200,551.68 against Xtreme.

Defendants now appeal, challenging the final judgment, the denial of their motion to take judicial notice of the State of Emergency, the denial of their

A-0262-23

motion to bar mention of the snow removal agreements, and the exclusion of the photo.

## II.

On appeal, defendants make six arguments. They contend that the trial court erred or abused its discretion in (1) refusing to charge the jury with Model Civil Jury Charge 5.20B(B)(2)(b); (2) denying their motion to bar reference to the Contract and Subcontractor Agreement; (3) refusing to take judicial notice of the weather-related State of Emergency and barring any reference to the State of Emergency; (4) allowing plaintiff to introduce evidence related to Xtreme's snow removal services provided in April 2018, during a subsequent storm; and (5) excluding the photo depicting where plaintiff fell. Finally, defendants assert that the cumulative effect of those errors warrants a new trial. The record and law do not support any of these arguments.

A. The Failure to Charge.

"[A]ppropriate and proper charges to a jury are essential for a fair trial." Prioleau v. Ky. Fried Chicken, Inc., 223 N.J. 245, 256 (2015) (quoting Velazquez ex rel. Velazquez v. Portadin, 163 N.J. 677, 688 (2000)) (internal quotation marks omitted). "A jury is entitled to an explanation of the applicable legal principles and how they are to be applied in light of the parties' contentions

A-0262-23

and the evidence produced in the case."  Ibid. (quoting Viscik v. Fowler Equip. Co., 173 N.J. 1, 18 (2002)) (internal quotation marks omitted).  "In addition to outlining the jury's role and framing the issues to be decided, the jury charge must 'correctly state the applicable law in understandable language, and plainly spell out how the jury should apply the legal principles to the facts as it may find them.'"  Comprehensive Neurosurgical, P.C. v. Valley Hosp., 257 N.J. 33, 75 (2024) (quoting Prioleau, 223 N.J. at 256-57).  A jury instruction that "has no basis in the evidence . . . is insupportable, as it tends to mislead the jury."  Ibid. (quoting Dynasty, Inc. v. Princeton Ins. Co., 165 N.J. 1, 13-14 (2000)).

Appellate courts review "whether the jury was adequately instructed on the law de novo, affording no deference to the trial judge's interpretive legal conclusions."  Id. at 74.  Nevertheless, appellate courts "will reverse and order a new trial only when 'the jury could have come to a different result had it been correctly instructed.'"  Id. at 75 (quoting Viscik, 173 N.J. at 18).  See also Willner v. Vertical Reality, Inc., 235 N.J. 65, 79 (2018) (explaining that, where a party objects at trial, jury instructions are evaluated using a harmless error standard).  "[A]n erroneous jury instruction [that] was incapable of producing an unjust result or prejudicing substantial rights does not require a new trial."

Comprehensive Neurosurgical, 257 N.J. at 75 (alterations in original) (quoting Prioleau, 223 N.J. at 257) (internal quotation marks omitted).

"'The fundamental elements of a negligence claim are a duty of care owed by the defendant to the plaintiff, a breach of that duty by the defendant, injury to the plaintiff proximately caused by the breach, and damages.'" Shields v. Ramslee Motors, 240 N.J. 479, 487 (2020) (quoting Robinson v. Vivirito, 217 N.J. 199, 208 (2014)). "Under New Jersey's general premises liability law, a proprietor owes 'his [or her] invitees due care under all the circumstances.'" Jeter v. Sam's Club, 250 N.J. 240, 251 (2022) (quoting Prioleau, 223 N.J. at 257). The duty imposed on a commercial property owner includes exercising reasonable care to keep parking lots free of ice and snow. See Bates v. Valley Fair Enters., 86 N.J. Super. 1, 6 (App. Div. 1964) (holding that commercial defendant had a duty to "exercise reasonable care to keep" its parking lot free of ice and snow because "[t]he parking area was an integral portion of defendant's shopping center").

The "ongoing storm rule" affects the duty of commercial landowners to remove snow and ice during a storm. "The premise of the rule is that it is categorically inexpedient and impractical to remove or reduce hazards from snow and ice while the precipitation is ongoing." Pareja v. Princeton Int'l Props.,

246 N.J. 546, 558 (2021). Our Supreme Court has adopted this rule, holding that "commercial landowners do not have the absolute duty, and the impossible burden, to keep sidewalks on their property free from snow or ice during an ongoing storm." Id. at 557. In that regard, the Court has explained that "absent unusual circumstances, a commercial landowner's duty to remove snow and ice hazards arises not during the storm, but rather within a reasonable time after the storm." Id. at 558 (citations omitted).

Model Civil Jury Charge 5.20F(5), which concerns duties owed by owners of land to invitees, states:

> An invitee is one who is permitted to enter or remain on land (or premises) for a purpose of the owner/occupier. The invitee enters by invitation, expressed or implied. The owner/occupier of the land (or premises) who by invitation, expressed or implied, induced persons to come upon the premises, is under a duty to exercise ordinary care to render the premises reasonably safe for the purposes embraced in the invitation. Thus, the owner/occupier must exercise reasonable care for the invitee's safety. The owner/occupier must take such steps as are reasonable and prudent to correct or give warning of hazardous conditions or defects actually known to the owner/occupier (or the owner's/occupier's employees), and of hazardous conditions or defects which the owner/occupier (or the owner's/occupier's employees) by the exercise of reasonable care, could discover.

The charge also states that, where a business invitee is involved, the court should add the following language to the charge:

> The basic duty of a proprietor of premises to which the public is invited for business purposes of the proprietor is to exercise reasonable care to see that one who enters the premises upon that invitation has a reasonably safe place to do that which is within the scope of the invitation.
>
> [Model Jury Charges (Civil), 5.20F(5).]

Model Civil Jury Charge 5.20B(B)(2)(b), which addresses the liability of a commercial property owner for snow and ice accumulation on sidewalks abutting the property, states:

> The law imposes upon the owner of commercial or business property the duty to use reasonable care to see to it that the sidewalks abutting the property are maintained in reasonably good condition. In other words, the law says that the owner of commercial property must exercise reasonable care to see to it that the condition of the abutting sidewalk is reasonably safe and does not subject pedestrians to an unreasonable risk of harm. The concept of reasonable care requires the owner of commercial property to take action with regard to conditions within a reasonable period of time after the owner becomes aware of the dangerous condition or, in the exercise of reasonable care, should have become aware of it. If, therefore, you find that there was a condition of this sidewalk that was dangerous in that it created an unreasonable risk of harm for pedestrians, and if you find that the owner knew of that condition or should have known of it but failed to take such reasonable action to correct or

11

remedy the situation within a reasonable period of time thereafter as a reasonably prudent commercial or business owner would have done under the circumstances, then the owner is negligent.

A commercial property owner may have a duty to clear public sidewalks abutting their properties of snow and ice for the safe travel of pedestrians. Maintaining a public sidewalk in a reasonably good condition may require removal of snow or ice or reduction of the risk, depending upon the circumstances. The test is whether a reasonably prudent person, who knows or should have known of the condition, would have within a reasonable period of time thereafter caused the public sidewalk to be in reasonably safe condition.

That charge also provides that, if there is "an ongoing storm or a dispute as to whether there was an ongoing storm," the court should add the following language:

However, a commercial property owner does not have a duty to keep sidewalks on its property free [from] snow or ice during an ongoing storm. A commercial property owner's duty to remove snow and ice hazards arises not during a storm, but rather within a reasonable time after the storm. There are two exceptions that may give rise to a duty before then. First, a commercial property owner may be liable if its actions increase the risk to pedestrians and invitees on their property. Second, a commercial property owner may be liable where there was a pre-existing risk on the premises before the storm.

[Model Jury Charges (Civil), 5.20B(B)(2)(b).]

12

By its express language, Model Civil Jury Charge 5.20B(B)(2)(b) addresses the sidewalks abutting a commercial property; therefore, it does not address parking lots on the commercial property. In that regard, we have previously held that commercial property owners have the same duty of care with respect to maintaining a parking lot as they do with respect to the rest of their property. Bates, 86 N.J. Super. at 6. Thus, Model Civil Jury Charge 5.20B(B)(2)(b) was not applicable to the facts of this case.

Moreover, eleven hours had passed between the end of the storm and plaintiff's injury, so the ongoing storm rule also did not apply. In making the holding in Pareja, the Supreme Court cited to several other cases that provide guidance on what is a "reasonable time after the storm." See Qian v. Toll Bros., Inc., 223 N.J. 124, 130, 135-36, 142 (2015) (holding that a common-interest community's homeowners association could be held liable for plaintiff's injuries where freezing rain accumulated until 1:00 p.m. and plaintiff slipped and fell "[t]hat afternoon"); Mirza v. Filmore Corp., 92 N.J. 390, 393, 395-96, 400-01 (1983) (explaining the obligation to remove snow and ice, and reversing summary judgment in favor of property owner where plaintiff was injured "shortly before 8:00 a.m." on February 9, and it had last snowed "during the night of February 8-9").

13

In short, the cases cited by the Court in Pareja make clear that commercial property owners are required to address snowy and icy conditions on their properties within a few hours of the precipitation stopping. Therefore, the trial court did not err in declining to give the jury instruction requested by defendants.

B.    The Snow and Ice Removal Agreements.

We review a trial court's evidentiary ruling for an abuse of discretion. State v. Martinez-Mejia, 477 N.J. Super. 325, 334 (App. Div. 2023), certif. denied, 256 N.J. 338 (2024). "An appellate court will not substitute [its] judgment unless the evidentiary ruling is so wide of the mark that it constitutes a clear error in judgment." Ibid. (alteration in original) (quoting State v. Medina, 242 N.J. 397, 412 (2020)) (internal quotation marks omitted).

Relevant evidence is "evidence having a tendency in reason to prove or disprove any fact of consequence to the determination of the action." N.J.R.E. 401. A trial court may exclude relevant evidence "if its probative value is substantially outweighed by the risk of . . . [u]ndue prejudice, [confusion] of issues, or misleading the jury." N.J.R.E. 403. "The party seeking the exclusion of the evidence must demonstrate that one or more of the factors listed in N.J.R.E. 403 substantially outweighs the probative value of the evidence." Griffin v. City of E. Orange, 225 N.J. 400, 420 (2016) (citations omitted).

"[W]hen a party challenges the admission of evidence under N.J.R.E. 403, the question is not whether the challenged [evidence] will be prejudicial to the objecting party, 'but whether it will be unfairly so.'" Id. at 421 (quoting Stigliano v. Connaught Lab'ys, Inc., 140 N.J. 305, 317 (1995)). Our Supreme Court has explained that "[e]vidence claimed to be unduly prejudicial is excluded only when its probative value is so significantly outweighed by [its] inherently inflammatory potential as to have a probable capacity to divert the minds of the jurors from a reasonable and fair evaluation of the issues in the case." Ibid. (second alteration in original) (quoting State v. Koskovich, 168 N.J. 448, 486 (2001)) (internal quotation marks omitted).

Here, the trial court did not abuse its discretion in ruling that evidence concerning the Contract and Subcontractor Agreement were admissible. Defendants argue that evidence regarding those contracts was irrelevant to the duty of care defendants owed and was unduly prejudicial. They also contend that the contracts were relevant only to the duties they owed each other, not to any duty owed to plaintiff, who was not a party to the contracts. Those arguments miss the relevance of the contracts.

Although the contracts do not define the duty of care owed to plaintiff, the trial court correctly reasoned that the contracts were probative of defendants'

understanding of their scope of responsibilities.  Accordingly, the contracts were relevant to the jury's apportionment of liability.  Moreover, defendants did not show that evidence of the Contract and the Subcontractor Agreement would be unduly prejudicial.  Thus, the trial court did not abuse its discretion in denying defendants' motion to bar evidence of the contracts.

C.    Judicial Notice of the Weather-Related Emergency.

"The purpose of judicial notice is to save time and promote judicial economy by precluding the necessity of proving facts that cannot seriously be disputed and are either generally or universally known."  State v. Silva, 394 N.J. Super. 270, 275 (App. Div. 2007).  A court may take judicial notice of "specific facts and propositions of generalized knowledge which are capable of immediate determination by resort to sources whose accuracy cannot reasonably be questioned."  N.J.R.E. 201(b)(3).  Thus, a court may take judicial notice of executive orders by the Governor.  See Green v. State Health Benefits Comm'n, 373 N.J. Super. 408, 418 n.4 (App. Div. 2004).

Judicial notice is allowed when "a party requests it on notice to all other parties and the court is supplied with the necessary information."  N.J.R.E. 201(d).  However, a matter of judicial notice can be excluded under N.J.R.E. 403, which allows a court to exclude relevant evidence if its probative value is

16

substantially outweighed by the risk of undue prejudice, confusion of issues, or misleading the jury. See N.J.R.E. 201(f).

In this matter, the trial court did not abuse its discretion in refusing to take judicial notice of the weather-related State of Emergency. Although the existence of the State of Emergency was a fact that the court was permitted to take notice of under N.J.R.E. 201(b)(3), the court evaluated the facts and found that evidence of the State of Emergency should be excluded under N.J.R.E. 403 because its probative value was slight and its potential for confusion and prejudice substantially outweighed the probative value.

Notably, the court found that the jury would be considering other evidence related to the weather conditions, including expert testimony, so the State of Emergency would not be very probative. The court also pointed out that no evidence demonstrated that the storm was ongoing at the time plaintiff fell, and that the State of Emergency did not affect the duties owed by defendants. Thus, the court did not abuse its discretion in refusing to take judicial notice of the weather-related State of Emergency.

D.   Reference to the Services in April 2018.

Defendants argue that the trial court improperly allowed plaintiff to ask witnesses questions that elicited testimony related to defendants' snow removal

services after a snowstorm in April 2018. Defendants point to two exchanges during trial that they claim introduced impermissible evidence.

The first exchange occurred during plaintiff's direct examination of Matthew Acar, the Director of Property Management for the company that managed Dewy Meadow Village:

> Q:    Did you like the way J&A performed the work?
>
> A:    In April? No.
>
> Q:    Okay. Just in April?
>
> A:    I had issues with them in April. Yes.
>
> Q:    Did you ever have any issues with the snow contractor showing up on time?
>
> A:    In April.
>
> Q:    In April?
>
> A:    Yes.
>
> Q:    Did you know if they were showing up on time in March?
>
> A:    They were sending me GPS locations on their trucks and photos of what they were doing, and when they send me the invoices, based on the records that they were showing me, they were showing up on time or around that time.
>
> . . . .

Q:     Where is this evidence of confirmation that any work was being done?

A:     I'll correct myself.  When I had that incident in April I asked them specifically why were you late or why you didn't show up in [a] certain time?  And they sent me GPS locations of the trucks that day and what they were doing [in April].

The second exchange occurred during plaintiff's direct examination of Guiseppe Iannuzzelli, one of the owners and partners of J&A Services:

Q:     . . . Did you or your partner provide any oversight at Dewy Meadow[] [Village] on March 8th?

A:     On March 8th?  No.

Q:     Oh, did you ever provide oversight on a different date related to around March 8th?

A:     I think in April that year was the only time we ever visited.

Q:     Okay.

A:     During the snow storm or right after the snow storm.

Q:     Okay.  All right.

A:     The last snow storm, whatever the last snow storm was that year.

        . . . .

Q:     Now, how did you feel [Xtreme] related to this storm on March 8th?

19

[Defense counsel]: Objection, Your Honor. He's not an opinion witness. He's a fact witness.

[The Court]: Okay. Given his -- I mean, given his line of work, I'll allow it. You can answer the question.

[Iannuzzelli]: Repeat it, please?
[By plaintiff's counsel]:

Q: Yeah. How -- how did [J&A Services] feel that [Xtreme] performed?

A: I didn't get any complaints, I don't think. So, I'm guessing he did a decent job.

Q: You said you didn't receive any complaints?

A: As far as I know. I didn't receive any.

Q: All right. Did you have any issues with response time?

A: To what?

Q: Did you have any issue with [Xtreme's] response time?

A: To the start of the storm, to the incident, to what? I don't understand.

Q: To -- to providing the services --

A: No.

Q: -- they were contracted to.

20

A-0262-23

A:    I didn't have any issues with him --

Q:    All right.

A:    -- providing the service.

[Defense counsel]:    Your Honor, may we approach?

After the second exchange, a sidebar discussion occurred where defense counsel seemed to object because of the references to the April 2018 storm.  The court noted defense counsel's objection but allowed the testimony to continue.

We discern no reversible error in allowing the limited testimony concerning the subsequent snowstorm.  First, we note that plaintiff's counsel did not expressly ask about subsequent actions; rather the witnesses raised the issues.  Defendants argue that the references to the April snowstorm violated the court's prior ruling that plaintiff could not introduce any evidence related to the non-renewal of Xtreme's snow removal services after the 2017-18 season.  The testimony does not support that contention.  Neither of the witnesses discussed termination of the contract; they only discussed their satisfaction with the snow removal services.  In short, the limited testimony about the April 2018 snowstorm was not capable of producing an unjust result and we discern no reversible error.

A-0262-23

E.     The Exclusion of the Photo.

Photographs are treated like writings and, therefore, must be authenticated to be introduced into evidence. State v. Hockett, 443 N.J. Super. 605, 613 (App. Div. 2016) (citations omitted). See also N.J.R.E. 801(e) ("A 'writing' consists of letters [and] . . . photographs . . . ."). The party seeking to introduce the photograph must make "a prima facie showing of authenticity." Hockett, 443 N.J. Super. at 613 (quoting State v. Joseph, 426 N.J. Super. 204, 220 (App. Div. 2012)) (internal quotation marks omitted). "This burden was not designed to be onerous. It is enough that the record contains 'evidence sufficient to support a finding that the matter is what its proponent claims.'" Ibid. (quoting N.J.R.E. 901). Our Supreme Court has explained what is required to authenticate a photograph:

> To authenticate a photograph, testimony must establish that: (1) the photograph is an accurate reproduction of what it purports to represent; and (2) the reproduction is of the scene at the time of the incident in question, or, in the alternative, the scene has not changed between the time of the incident in question and the time of the taking of the photograph.
>
> [State v. Wilson, 135 N.J. 4, 15 (1994) (citing Garafola v. Rosecliff Realty Co., 24 N.J. Super. 28, 42 (App. Div. 1952)).]

22

"'[A]ny person with knowledge of the facts represented in the photograph may authenticate it[;]'" testimony from the person who took the photograph is not necessary.  Hockett, 443 N.J. Super. at 613 (quoting Joseph, 426 N.J. Super. at 220).  "[T]he judge has some degree of latitude when testimony in support of authentication is found unworthy of credit;" however, where there is "some legitimate reason for questioning the witness's veracity" about what a photograph depicts, the "better course" may be for the judge to "acknowledge the photograph[] appear[s] to be what [it is] purported to be and leave for the factfinder a 'more intense review' of the photograph[] and the credibility of the authenticating witness."  Id. at 614-15 (citation omitted).

In her answers to interrogatories, plaintiff had stated that she had taken the photo depicting the parking lot where she was injured at approximately 7:35 a.m. on the date of her injury.  During her deposition, however, plaintiff testified that her supervisor had taken the photo.  She did confirm that the "area" depicted in the photo "look[ed] familiar" to her.  Her testimony at her deposition, however, is somewhat unclear because although plaintiff recognized the area depicted in the photo as part of the parking lot, she did not clearly state the photo showed the area where she fell.

23

The court excluded the photo on the grounds that plaintiff had not taken it and could not authenticate it. That ruling was an error, but the error was harmless. State v. Oguta, 468 N.J. Super. 100, 108-09 (App. Div. 2021) (citing State v. Baum, 224 N.J. 147, 159 (2016)) (holding that error is harmless if there is no possibility the error "led to an unjust result" and "led the jury to a verdict it otherwise might not have reached").

Although a photo of the parking lot at the time of the accident may have been probative, it is not clear, and defendants do not explain, what information the excluded photo depicted. Moreover, there were other photographs of the parking lot that were admitted into evidence. Thus, even if the trial court abused its discretion in excluding one photo, the exclusion did not constitute reversible error.

F. The Alleged Cumulative Errors.

An appellate court "may reverse a trial court's judgment and order a new trial when 'the cumulative effect of small errors [is] so great as to work prejudice.'" Comprehensive Neurosurgical, 257 N.J. at 85 (alteration in original) (quoting Torres v. Pabon, 225 N.J. 167, 190 (2016)). In a cumulative error analysis, the court does "not merely count the number of mistakes," but

rather "'consider[s] the aggregate effect of the trial court's errors on the fairness of the trial.'" Id. at 85-86 (quoting Torres, 225 N.J. at 191).

Our analysis of defendants' other arguments establishes that there were no cumulative errors warranting a new trial. Instead, a review of the trial record shows that defendants were afforded a full opportunity to present their defenses. The jury simply did not accept all their defenses.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0262-23